368 A.2d 651
**COMMONWEALTH of Pennsylvania**
**v.**
**Ira GREGG, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 21, 1975.

Decided Jan. 28, 1977.

---

Nicholas Trott Long, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Deborah E. Glass, Philadelphia, for appellee.

Before EAGEN, O'BRIEN, POMEROY, NIX; and MANDERINO, JJ.

## OPINION

MANDERINO, Justice.

Appellant, Ira Gregg, was indicted for murder, tried by a jury and found guilty of murder in the first degree. A sentence of life imprisonment was imposed, post-verdict motions were denied and this appeal followed.

Prior to trial, appellant moved to dismiss the indictment, contending that he had not been tried within one hundred twenty days as required by Article IV(c) of the Interstate Agreement on Detainers. (19 P.S. § 1431). This contention was renewed in post-verdict motions and again in this appeal.

■ We hold that the charge against the appellant should have been dismissed because he was denied the right to a speedy trial within the requirements of the Interstate Agreement on Detainers, 19 P.S. § 1431. Because of this there is no need to consider other issues raised.

Pursuant to the Agreement on Detainers, appellant was brought to this Commonwealth from Kansas in early January of 1974. Article IV(c) of the Agreement on Detainers mandated that the appellant be tried within one hundred twenty days of his arrival in Pennsylvania The applicable provision states:

"In respect of any proceeding made possible by this article, *trial shall be commenced within one hundred twenty days of* the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." (Emphasis added.)

There is no dispute that the one hundred twenty day period specified by the Agreement concluded on May 4,

1974, and that appellant's trial did not commence until June 19, 1974. Subsequent to that date, appellant moved for dismissal of the charges.

■ Our approach to the problem begins with the admonition of *Commonwealth v. Fisher,* 451 Pa. 102, 106, 301 A.2d 605, 607 (1973) that because

"[t]he legislation adopting the agreement is obviously remedial in character . . . by familiar principal (sic) [it] should be construed liberally in favor of the prisoner."

The time periods specified by the Agreement delineate a particularized period after which a defendant's right to speedy trial will be deemed to have been violated. *Commonwealth v. Bunter,* 445 Pa. 413, 282 A.2d 705 (1971). *See also Commonwealth v. Whitaker,* 467 Pa. 436, 359 A.2d 174 (1976). The statute is "a prophylactic measure [designed] to induce compliance in the generality of cases." *Commonwealth v. Fisher,* 451 Pa. 102, 107, 301 A. 2d 605, 607 (1973). The sanction for failure to comply with the time period specified in Articles III(c) and IV(c) is found in Article V(c):

". . . in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV, hereof, *the appropriate court* of the jurisdiction where the indictment, information or complaint has been pending *shall enter an order, dismissing the same with prejudice,* and any detainer based thereon shall cease to be of any force or effect." (Emphasis added.)

Thus, under the agreement, failure to try appellant within one hundred twenty days requires a reversal and a discharge unless the time limit was properly extended beyond May 4, 1974.

328

■ Article IV (c) of the agreement provides that

". . . for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

In this case, no extension was granted under the above section. Neither appellant, nor his counsel, nor the prosecution, ever requested "in open court" a continuance of the matter. In fact, no continuance could have been requested prior to May 4, 1974. A request for a continuance assumes that a trial has been scheduled. In this case, the trial was not scheduled at any time before May 4, 1974.

Article IV (c), however, is not the only provision of the Agreement permitting an extension beyond the one hundred twenty day limit. Article VI (a) of the Agreement must also be considered. That section provides that

". . . the running of said time period shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter."

In this case there is nothing in the record to indicate that the prisoner was "unable to stand trial," and there is nothing in the record to indicate that that issue was ever brought before the court, or decided by the court.

■ The prosecution, however, contends that the time period should have been tolled because the delay in commencing trial was the "fault" of defense counsel. The prosecution contends that the delay was the "fault" of defense counsel because defense counsel was on vacation for a period of one week from February 5 to February 12, 1974, and because defense counsel was in the hospital for one week from February 13 to February 20, 1974. We first note that this two-week period was many weeks prior to the expiration of the one hundred twenty day time period. More importantly, however, it is undisput-

ed that the appellant's case was not listed for trial during the above two-week period. The mere fact that an attorney would not have been able to try a case *if* the case had been listed for trial cannot serve as a justification for tolling the one hundred twenty day time period. If that were the case, the one hundred twenty day time limit would be meaningless. All the prosecution would have to do after expiration of the time limit would be to establish with hindsight that on each of the one hundred twenty days defense counsel was occupied with other matters. The whereabouts of defense counsel is immaterial *unless* the case is called to trial and the whereabouts or activities of defense counsel *causes* a delay.

■ The prosecution also contends that the delay was defense counsel's "fault" because, even though defense counsel never formally requested a continuance, the case was not called to trial because it was known by court officials that defense counsel had been ill and would not be available to try the case. We must reject this argument. The Agreement provides in Article IV(c) that

"for good cause *shown in open court, the prisoner or his counsel being present,* the court having jurisdiction of the matter may grant any necessary or reasonable continuance." (Emphasis added.)

No such hearing ever took place. For this reason we cannot agree with the prosecution that a "continuance" was granted. Even if, as the prosecution's brief intimates, court officials took it upon themselves to make certain deductions as to trial counsel's ability to conduct a jury trial because of his hospitalization, the fact remains that neither the defense nor the prosecution ever came before the court with a request for a continuance. We will not interpret the sua sponte actions of court officials, whether or not they be taken with the benefit of the defendant in mind, as being actions taken by the defendant or the defendant's trial counsel. Thus, neither

*Commonwealth v. Martin*, 445 Pa. 49, 282 A.2d 241 (1971), nor *Commonwealth v. Bell*, 442 Pa. 566, 276 A.2d 834 (1971), are controlling here.

■ The prosecution further contends that defense counsel caused the delay because, within a few days after his release from the hospital on February 20, 1974, he informally told a trial coordinator for the homicide program that he did not want to try this case because he was still recuperating. According to the prosecution, this informal statement indicates that this case was not called to trial after defense counsel's release from the hospital on February 20 because of defense counsel's recuperation. This argument is based on the following testimony by the trial coordinator:

"Q. Do you recall the date that he was to come out of the hospital because of that illness?

A. I learned it was the 21st, I believe. But—

Q. Where did you—21st of February?

A. That's correct.

Q. Where did you obtain that information? Do you recall?

A. I think I obtained that from his office.

Q. After the 21st, between the 21st and 27th, when the case was dropped from the top of the list to the bottom of the backup list, did you have any information from [defense counsel] himself or from his office concerning his ability to come back and try cases?

A. I spoke with [defense counsel]—I think he said approximately after he came back to work. I think he said he was trying to get his other cases together. He was trying cases, and that he didn't actually want to try the Ira Gregg case at that particular time because he was recuperating."

The prosecution contends that the above testimony indicates that defense counsel requested a "continuance" by

his remarks to the trial coordinator. Defense counsel's remarks to the trial coordinator, however, must be read in context, considering all of the testimony of the trial coordinator who testified for the prosecution. When so considered, it is clear that the previously quoted testimony was nothing more than a hope expressed by defense counsel that the Ira Gregg case would not be called to trial immediately after defense counsel was released from the hospital.

Additional testimony by the trial coordinator is highly significant. The trial coordinator testified as follows on direct examination:

"Q. You said that the District Attorney was anxious to try this case. Was that ever manifested to yourself or the Court, and if so by whom?

A. It was manifested to me and also to the Court at one time. *I would like to add that [defense counsel] at one time said that he was interested in disposing of the case himself too. He said it was quite a thing to have the case hanging on as long as it had been.*" (Emphasis added.)

More significantly the following took place during the cross-examination of the trial coordinator by defense counsel:

"Q. And at that time the discussion centered around the normal discussions that we have in pretrial conference, as to when cases will be tried; is that correct?

A. That's correct, sir.

Q. At that time I advised you I would be away for a week; is that correct?

A. That's correct, sir.

Q. At that time the Ira Gregg case was not listed for trial; isn't that correct?

A. It was in backup status, sir.

Q. All right. It was in a backup status. But there was no date where it was to go to trial at that time; isn't that correct?

A. That's correct, sir.

Q. Then when I returned from vacation on the 12th, I went in the hospital on the 13th, and the next time you saw me was on the 20th; isn't that correct? The 20th or 21st of February, when I came back to work; do you recall that?

A. Possibly I saw you before that. I'm not sure. But I agree, around the 20th.

Q. You saw me in front of 613 and you remarked, did you not, as to my health. And you were surprised that I was back in court that fast; isn't that correct?

A. That's correct, sir.

Q. You asked me at that time if I was all right. I told you, 'Yes.' I said, 'The reports were exaggerated. I did not have a heart attack. I'm ready to go to work. I'm trying cases now.'

Do you remember me telling you that?

A. That's right, sir.

Q. That was the 21st of February?

A. I'm not sure of the date, sir.

Q. All right. Somewhere around there, 21st or 22nd. Now, from the 21st of February until May the 18th, three months, as far as you know I was not incapacitated in any way, was I?

A. No.

Q. If you know—you're right—that I did go back in the hospital on the 18th of May for a week, but from the 21st of February until the 18th of May you saw me practically every day someplace in the Hall, did you not?

A. Yes, sir.

Q. And you knew of your own knowledge that I was engaged in the trial of criminal cases every day from the time that I came out of the hospital, February 21st, until the time I went back in on May 18th; is that correct? You do know that, don't you?

A. That's correct, sir.

Q. Now, during that period of time, that three month period of time, this case never arrived, as you all put it, at the top of the list ready for trial; did it?

A. No, it didn't.

Q. I was never told, 'We're ready to try the Ira Gregg case;' is that correct?

A. No, sir.

Q. That's not true?

A. I don't believe so.

Q. Well, let me change it around. Did I ever inform you or Judge Anderson that I was not ready to try the Ira Gregg case?

A. No, sir. You did not.

Q. Was an application ever made in open court by me, with the defendant being present, for a continuance of this case?

A. No, sir. It was not."

Later, during cross-examination, the trial coordinator testified as follows:

"Q. Do your records show at anytime I asked the Court for a continuance in this case?

A. Not to my knowledge, sir, except for the vacation time, the scheduling, when you asked for your vacation.

Q. Asked the Court in open court, with the defendant being present, for a continuance. Do you know of any time I did that?

A. No, sir.

334

Q. And from February 21st to May 25th, I think you said, was the next time the case became eligible to be tried on the top of the list, is that correct?

A. I think May the 20th.

Q. May the 20th?

A. Yes.

Q. Almost three months?

A. That's correct."

It is quite clear from the testimony presented by the trial coordinator that defense counsel at no time asked for a continuance or a delay in the scheduling of this case. It is also quite clear that the case was not scheduled for trial until after May 4, 1974. A fair reading of the entire testimony of the trial coordinator permits only one conclusion: that defense counsel's expression of hope that the Ira Gregg case would not be called to trial at "a particular time" immediately after defense counsel's release from the hospital was not a request for a delay or a continuance. The trial coordinator admitted that the case was not called to trial and defense counsel was never informed that it was being called for trial until after May 4, 1974.

Dealing with the analogous situation of computation of the time periods specified by Rule 1100 of our Rules of Criminal Procedure in *Commonwealth v. Mayfield,* 469 Pa. 214, 364 A.2d 1345 (1976), and in *Commonwealth v. Shelton,* 469 Pa. 8, 364 A.2d 694 (1976), we held that the amount of time that has elapsed between the filing of the complaint, or other initiation of prosecution, and the date on which the Commonwealth applied for a continuance, or the defendant applied for dismissal, is to be computed from the date of the complaint to the date of the application, less any periods which are properly excludable pursuant to subsection (b) of the Rule. If the time so computed exceeds the mandatory period prescribed by the Rule, or in cases where continuances have properly been

granted according to the Rule, exceeds the time period specified in the order granting the last extension, then the application will be considered untimely and the action dismissed. The same method of computation is applicable in the instant situation, from the date of arrival in the receiving state.

In the instant case, the period of time elapsing from the date of arrival, (January 4, 1974) until the date of the application for dismissal of the complaint, (June 19, 1974) less any periods which could properly be excluded pursuant to Article VI of the Agreement (in this case there are none) far exceeds the one hundred twenty days prescribed by the statute. Appellant was therefore denied his right to a speedy trial, as that right is defined by the Interstate Agreement on Detainers, and the indictment should have been dismissed.

Judgment of sentence reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

JONES, C. J., and ROBERTS, J., did not participate in the consideration or decision of this case.

EAGEN and O'BRIEN, JJ., concur in the result.