COMMONWEALTH *vs.* DAVID DICKSON.

Suffolk. March 1, 1982. — May 12, 1982.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Homicide. Practice, Criminal,* Capital case, Detainer. *Interstate Agreement on Detainers.*

A motion to dismiss on the ground of a violation of art. IV (*c*) of the Interstate Agreement on Detainers, requiring that a trial be commenced within 120 days of the arrival of the prisoner in the receiving State, was properly denied where the circumstances provided "good cause" for the judge's continuing the case for trial beyond the 120-day requirement. [231-232]

INDICTMENT found and returned in the Superior Court Department on March 9, 1979.

The case was tried before *McGuire,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*William C. Madden* for the defendant.

*Philip T. Beauchesne,* Assistant District Attorney, for the Commonwealth.

NOLAN, J. This appeal raises two issues: (1) whether error was committed in the denial of the defendant's motion to dismiss on the ground of a violation of art. IV (*c*) of the Interstate Agreement on Detainers (Agreement), a compact to which both Massachusetts and New York, among other States, are parties (St. 1965, c. 892, § 1), and (2) whether the verdict of murder in the second degree should be reduced in the exercise of our power under G. L. c. 278, § 33E. There was no error in the denial of the motion and after a careful examination of the transcript and record, we leave the verdict undisturbed.

1. *Compliance with agreement.* From the stipulation filed by the parties and from the findings made by the trial judge, we learn that the defendant was indicted on March 9, 1979, for the murder of David W. Strong on or about November 22, 1976. It was not until October 4, 1979, that the defendant was brought from New York (where he had been arrested on unrelated charges) to Boston under the Agreement. Counsel was appointed and the defendant was arraigned on October 5, 1979. Bail was set at $35,000 on October 9, 1979. On October 30, 1979, a trial date of January 14, 1980, was established.

The defendant's bail was modified to permit him to deposit $3,500 in cash. A further modification permitted the defendant to post a bankbook in the amount of $3,000 and $500 in cash. The defendant made this bail sometime after December 21, 1979. It has been stipulated that the defendant waived his right to be tried within 120 days of his "arrival . . . in the receiving state." Art. IV (c) of the Agreement.

On April 1, 1980, the defendant was defaulted for failure to appear in court. He was arrested in New York and returned to Massachusetts on August 29, 1980. On September 2, 1980, he was brought to court, his default was removed, prior bail orders were revoked and he was ordered to recognize in the amount of $100,000 or $10,000 in cash. A trial date of November 4, 1980, was set.

It was not until November 24, 1980, that a hearing was held to determine the status of the defendant's case. At that time, the judge continued the case for trial until January, 1981. A hearing on the defendant's motion to suppress commenced on January 8, 1981. The empanelment of a jury started on January 16, 1981.

The Agreement provides that "trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown . . . the court having jurisdiction of the matter may grant any necessary or reasonable continuance." The defendant's second arrival in Boston was on August 29, 1980. A period of 120 days required trial on or before December 27, 1980. It is

clear that the 120-day deadline was not met. We are, there-fore, constrained to decide whether there was "good cause shown" for the continuance to January, 1981.

At the November 24, 1980, hearing, the judge assigned to preside at the defendant's trial pointed out that he was about to start a murder trial in which Dickson's trial counsel was representing another client on trial for murder. That murder case could not yield its position of priority for trial because a United States Navy ship, to which many of the Commonwealth's witnesses were attached, was due to leave port for an extended voyage. This exigency coupled with the attorney's commitments provides an abundance of "good cause" for exceeding the 120 days. See *United States v. Ford*, 550 F.2d 732, 742-743 (2d Cir. 1977), aff'd sub nom. *United States v. Mauro*, 436 U.S. 340 (1978). The motion to dismiss was correctly denied.

2. *Review under G. L. c. 278, § 33E.* The jury could have found that the defendant, whose home was in New York city, came to Massachusetts to visit his family. He stayed with a friend on the night before his encounter with the victim, David W. Strong. It was about 11:30 P.M. on the night of the murder when Strong approached the de-fendant in a bar on the corner of Chandler and Clarendon Streets in Boston. The defendant and the victim were not acquainted but Strong offered to buy a drink for the defend-ant. Strong then made a number of homosexual advances to the defendant to all of which the defendant protested a lack of interest. Strong moved away but returned shortly and offered money to the defendant in return for the de-fendant's homosexual favors. Strong's price was originally inadequate to induce the defendant, but ultimately they struck a bargain for $100. They finished their libations and went to Strong's real estate office because it was there, ac-cording to Strong, that he would get the money from the safe. Leaving the office, they went to Strong's apartment a few blocks away. In the apartment, Strong poured drinks and renewed his advances. They engaged in fellatio, but the defendant declined the invitations of Strong for sodomy.

The defendant asked for his money. Strong refused to pay him. They argued. Strong demanded that the defendant leave the apartment and the defendant rejoined by demanding his money. The defendant testified that Strong grabbed him around the neck, and ordered him out of the apartment. The defendant pushed Strong with his elbow. They grappled and Strong (according to the defendant's testimony) seized a knife, and lunged at the defendant's face. The defendant was struck on the arm in an attempt to protect his face. The defendant grabbed Strong's arm which held the knife. Strong wrestled the defendant to the floor where the defendant seized the knife and stabbed Strong repeatedly.

Before leaving the apartment, the defendant washed the blood from his hands, took a television set from a table and fled. He sold the television set for bus fare to New York to which he repaired.

The medical examiner testified that Strong, who was five feet eleven inches tall and weighed about 165 to 175 pounds, died from eight stab wounds, four on the front left chest and four on the left back. One of the stab wounds penetrated the thoracic cavity, causing him to bleed to death within a few minutes. The judge correctly charged the jury on murder and manslaughter.

We have reviewed the entire record and we are satisfied that the defendant received a fair trial and that the jury's verdict of murder in the second degree is warranted.

*Judgment affirmed.*