STATE of Missouri, Plaintiff-Respondent,

v.

John William SMITH, a/k/a, John Arthur Maxim, Defendant-Appellant.

No. 13422.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 19, 1985.

James D. McNabb, Asst. Public Defender, Springfield, for defendant-appellant.

John Ashcroft, Atty. Gen., Shelley Woods, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

MAUS, Judge.

The defendant was convicted of burglary and stealing. He presents one point of alleged error. He contends the trial court erred in not dismissing the information because he was not brought to trial within the applicable period of limitation prescribed by the interstate Agreement on Detainers (the agreement), § 217.490, RSMo Supp. 1984.

The need for and the history of the agreement has been well stated. *United States v. Mauro,* 436 U.S. 340, 98 S.Ct.

1834, 56 L.Ed.2d 329 (1978); *Brown v. Wolff,* 706 F.2d 902 (9th Cir.1983). In general, the agreement provides a means for the disposition of criminal charges pending in a receiving state against a prisoner incarcerated in a sending state and against whom a detainer has been lodged. The provisions of the agreement may be invoked by the prisoner or by an appropriate official of the receiving state.

When the agreement is invoked by the prisoner, Article III § 1, thereof declares: "[H]e shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; ...." The issue presented is whether or not the defendant invoked that article, and, if so, was he brought to trial within the time therein prescribed.

The complaint that initiated this case was filed June 19, 1981. At that time, the defendant was in prison in Indiana. At an undisclosed time, a detainer was lodged against him on the basis of the pending complaint. On July 16, 1982, by Agreement on Detainers Form I, the defendant was given notice of the detainer and his right to invoke the agreement. He did so on that day by executing Agreement on Detainers Form II, "Inmates Notice of Place of Imprisonment and Request for Disposition." While the record is otherwise silent on the subject, it is established by tacit agreement of counsel that on July 16, 1982, the warden of the Indiana prison mailed the documents specified by the agreement to the prosecuting attorney in Missouri. He did not, as provided by the agreement, mail a copy of those documents to the court in which the complaint was pending. On September 16, 1982, apparently on Agreement on Detainers Form VII, the Missouri prosecuting attorney executed "Prosecutor's Acceptance of Temporary Custody Offered in Connection with a Prisoner's Request for Disposition of a Detainer", referring to the defendant. The judge of the Missouri court in which the complaint was pending executed the certificate on that form.

On October 27, 1982, under the provisions of the agreement and that acceptance, the defendant was returned to Missouri. Upon a preliminary hearing on November 15, 1982, the defendant was bound over to the circuit court on the charges of burglary and stealing. On November 19, 1982, an appropriate information was filed. The defendant was arraigned and pled not guilty. The case was set for trial on January 10, 1983. There is no record of what, if any, action was taken on January 10, 1983. The case was not tried that day.

On January 1, 1983, a new procedure for setting felony criminal cases for trial in that circuit court became effective. The following, in very general terms, is a summary of that procedure. At the beginning of the year, certain weeks were designated for the trial of felony cases by a jury. A list of pending felony cases was maintained by computer. The cases were listed chronologically, from the earliest to the most recently filed. On the Monday preceding a jury trial week, the assigned judge called the docket from a computer print-out. Counsel were expected to attend the docket call. Following the docket call, a list of cases set for trial during the jury week was posted on the bulletin board. While it is not so provided by rule, it was apparently the practice to terminate the docket call when a point was reached when it was obvious that it was impractical to set additional cases for trial during the subsequent jury week.

Testimony or stipulation established the following. There was a docket call on January 3, 1983, but the call terminated before the defendant's case was reached. The docket call scheduled for January 17, 1983 was not held. There was a docket call on February 7, 1983, but the defendant's case does not appear on the print-out filed as an exhibit. It is conceded it was not called. The defendant's case was not reached at

the docket call held February 27, 1983, or on March 7, 1983.

A docket entry shows that on March 21, 1983, the defendant's case was called and set as the fourteenth case for trial for the week of March 28, 1983. The next docket entry is April 4, 1983. That entry reflects the case was called and set for trial on April 11, 1983. On April 7, 1983, the defendant filed a motion to dismiss based upon a violation of the agreement. The motion was overruled. The defendant was tried and convicted on April 28, 1983. The motion was renewed subsequent to that trial, but again overruled.

Under the provisions of § 2 of Article III, a prisoner is to give or send his written notice and request for disposition to the warden or other official having custody of him. Under that section, it was the duty of that official to promptly forward the notice and request, with a certificate of the prisoner's status, "to the appropriate prosecuting official and court by registered or certified mail, return receipt requested." As noted, § 1 of Article III, provides that the prisoner shall be brought to trial within 180 days after he has caused that notice and request to be so delivered.

The courts of the states which are parties to the agreement are not uniform concerning what triggers that 180-day limitation.

Other jurisdictions which have adopted the Agreement on Detainers are divided on the question whether the one hundred eighty day period begins on the date (a) on which the defendant requests the warden of the institution in which he is confined to forward the necessary papers (*Beebe v. State*, 346 A.2d 169, 171 [Del. 1975]), (b) on which the papers are actually mailed (*State v. Wood*, 241 N.W.2d 8, 11–13 [Iowa 1976]), or (c) on which the authorities in the other state receive the request for prompt disposition (*Commonwealth v. Fisher*, 451 Pa. 102, 104–105, 301 A.2d 605 [1973]). See *Davidson v. State*, 18 Md.App. 61, 67, 305 A.2d 474 (1972), cert. den. 269 Md. 757 (1973).

*Commonwealth v. Carrillo*, 5 Mass.App. 812, 361 N.E.2d 415, 416 (1977). Compare *State v. Carroll*, 670 P.2d 1290 (Hawaii App.1983); *State v. Savage*, 522 S.W.2d 144 (Mo.App.1975). It has been held that under extraordinary circumstances, a dismissal may become appropriate when a warden fails to promptly inform a prisoner of a detainer and his right to request a disposition thereof as required by § 3 of Article III. *Romans v. Dist. Ct. In & For Eighth Jud. Dist.*, 633 P.2d 477 (Colo. banc 1981). But see *Coit v. State*, 440 So.2d 409 (Fla.App.1983); *People v. Howell*, 119 Ill. App.3d 1, 74 Ill.Dec. 734, 456 N.E.2d 236 (1983); *State v. Clark*, 222 Kan. 65, 563 P.2d 1028 (1977); *Com. v. Gonce*, 320 Pa. Super. 19, 466 A.2d 1039 (1983).

In this state, it has been uniformly held that this period of limitation is triggered only when the required documents are received by the prosecuting attorney and the appropriate court. *State ex rel. Kemp v. Hodge*, 629 S.W.2d 353 (Mo. banc 1982); *State v. Soloway*, 603 S.W.2d 688 (Mo.App.1980); *State ex rel. Saxton v. Moore*, 598 S.W.2d 586 (Mo.App.1980); *State ex rel. Hammett v. McKenzie*, 596 S.W.2d 53 (Mo.App.1980). Following that rule, the agreement was not invoked when the defendant's notice and request was received only by the prosecuting attorney. *State v. Soloway*, supra. Nevertheless, as noted, on September 16, 1982, the prosecuting attorney executed "Prosecutor's Acceptance of Temporary Custody Offered in Connection with a Prisoner's Request for Disposition of a Detainer." The judge of the court in which the complaint was pending executed a certificate thereon. That certificate read:

I hereby certify that the person whose signature appears above is an appropriate officer within the meaning of Article IV(1) and that the facts recited in this request for temporary custody are correct and that having duly recorded said request I hereby transmit it for action in accordance with its terms and the provisions of the Agreement on Detainers.

■ Under facts remarkably similar to this case, it has been held the execution of that acceptance and certification "constituted a waiver of the prisoner's failure to notify 'the appropriate court.' It set the 180–day period running." *State ex rel. Saxton v. Moore*, supra, at 592.

As observed in that case, the prisoner intended to invoke the agreement. The irregularity in the compliance with its terms was that of the warden. The prisoner received a copy of the acceptance of custody, which made no reference to any irregularity. The agreement was utilized by Missouri in returning the prisoner. The logic of *State ex rel. Saxton v. Moore*, supra, is compelling and is followed by this court.

■ In determining whether or not the defendant was brought to trial within that 180-day period so invoked, it is appropriate to observe certain basic principles applicable to the construction of the agreement. A violation of the agreement is not a mere technical error. *Brown v. Wolff*, supra. The agreement is to be construed in favor of the prisoner. *State ex rel. Hammett v. McKenzie*, supra; *State v. Quiroz*, 94 N.M. 517, 612 P.2d 1328 (1980); *Commonwealth v. Gregg*, 470 Pa. 323, 368 A.2d 651 (1977). The agreement is to be construed in harmony with the Uniform Mandatory Disposition of Detainers Act, § 217.450 to 217.485 (formerly § 222.080 to 222.150). *State ex rel. Kemp v. Hodge*, supra. The terms of the agreement cause decisions of other states which are a party to the agreement to be particularly valuable in its construction. Id. When the time limitation under the agreement has expired, the burden is upon the state to produce evidence there was good cause within the meaning of the agreement to delay the trial beyond 180 days. *State ex rel. Hammett v. McKenzie*, supra.

The 180-day limitation is not absolute. Section 1, Article III expressly provides "that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." Section 1 of Article VI provides "the running of the time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter."

■ Further, the extension of the periods of limitation in the agreement has not been limited to the express provisions of those sections. Those periods have been extended under a variety of circumstances and for a variety of reasons. Most often such extensions have been founded upon a prisoner's express or implied waiver of the applicable period of limitation. In that respect, it has been said that a prisoner's express waiver of the agreement must meet the test of a knowing and voluntary waiver of a constitutional right as defined in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *State ex rel. Hammett v. McKenzie*, supra. However, it is generally recognized that a prisoner may, by his actions, otherwise waive or be barred from asserting that limitation. *Russell v. State*, 624 S.W.2d 176 (Mo.App. 1981). Cf. *United States v. Eaddy*, 595 F.2d 341 (6th Cir.1979); *People v. Sevigny*, 679 P.2d 1070 (Colo. banc 1984).

■ It is generally held that any delay of a prisoner's trial which results from his affirmative action or agreement is not to be included in the period of limitation. *Brown v. Wolff*, supra; *United States v. Scheer*, 729 F.2d 164 (2nd Cir.1984); *Russell v. State*, supra. Cf. *United States v. Eaddy*, supra. In many cases the courts have declared the circumstances and prisoner's conduct toll the period of limitation or bar him from relying upon the same. Other cases declare the provisions of the agreement do not rise to a constitutional level and the doctrine of *Johnson v. Zerbst*, supra, is not applicable. *United States v. Black*, 609 F.2d 1330 (9th Cir.1979), cert. denied, 449 U.S. 847, 101 S.Ct. 132, 66 L.Ed.2d 56 (1980).

A delay resulting from the following circumstances has been excluded from the period of limitation. When a defendant has

asked for additional time to prepare, *Simakis v. District Court of Fifth Jud., Etc.*, 194 Colo. 436, 577 P.2d 3 (banc 1978); when a continuance was granted at the request of a defendant, even though the request for the continuance was oral and not made in open court, *State v. Sallee*, 624 S.W.2d 184 (Mo.App.1981); when a defendant expressly consented to a continuance beyond the period of limitation, *Commonwealth v. Washington*, 488 Pa. 133, 411 A.2d 490 (1979); when a trial was delayed by plea bargaining being actively pursued by a defendant, *Commonwealth v. Martin*, 445 Pa. 49, 282 A.2d 241 (1971); where a delay results from a continuance granted at the request of the defendant, *State v. Armstrong*, 624 S.W.2d 36 (Mo.App.1981); *People v. Anderson*, 649 P.2d 720 (Colo. App.1982); when a delay is actually necessary because of motions filed by the defendant, *United States v. Scheer*, supra; *Commonwealth v. Fasano*, 6 Mass.App. 325, 375 N.E.2d 361 (1978); and where the defendant asked for a trial setting beyond the period of limitation, *Russell v. State*, supra.

■ In this case, on November 19, 1982, immediately following his arraignment, the defendant filed a motion to dismiss and for a bill of particulars. He also filed a request for disclosure by the state. The docket also shows the contemporaneous filing of a notice of a hearing on those pleadings was filed. There is no further reference to these motions or the request until April 28, 1983, immediately preceding the trial. At that time the motions were overruled. The request was acknowledged to have been satisfied.

In overruling the defendant's motion to dismiss, based upon violation of the agreement, the trial court found 45 days to be a reasonable time for the disposition of the motions and request. It extended the 180-day period by that length of time.

The motions and requests do not provide a basis for such extension. "The period to be excluded is not, however, a normal time reasonably to be assigned to the disposition of a similar motion. It is *the period of*

*delay*, if any, which in the individual case may be *actually ascribed to* consideration and determination of *the particular motion ....*" *People v. Torres*, 60 N.Y.2d 119, 468 N.Y.S.2d 606, 610, 456 N.E.2d 497, 501 (1983) (emphasis added). That rationale is the underlying basis of cases such as *State ex rel. Hammett v. McKenzie*, supra, and *Commonwealth v. Gregg*, supra. The record discloses no reason why those motions could not have been disposed of within a short time after they were filed. There is no evidence the process of discovery did in fact delay the trial. There is no suggestion in the record of how those pleadings could have resulted in delay. The state did not meet its burden to establish that the defendant's motions and request delayed the trial. *Commonwealth v. Wilson*, 231 Pa.Super. 451, 331 A.2d 792 (1974); *Commonwealth v. Gregg*, supra.

■ This court is not unaware or unappreciative of the crushing case load imposed upon trial courts. Extraordinary circumstances of congestion may constitute good cause within the meaning of the agreement for the continuance of a trial beyond the period of limitation. *Commonwealth v. Dickson*, 386 Mass. 230, 434 N.E.2d 1284 (1982); *Commonwealth v. Carrillo*, supra. Cf. *Brown v. Wolff*, supra. However, in general, "[a]n overcrowded docket is not *per se* good cause to extend the time period." *State ex rel. Hammett v. McKenzie*, supra, at 58. That rule is generally recognized and followed. *Brown v. Wolff*, supra; *State v. Gipson*, 670 S.W.2d 637 (Tenn.Cr.App.1978). Also see *United States v. Mauro*, supra.

■ The state argues that the failure to set the defendant's case for trial because of the crowded docket should be treated as an informal continuance for good cause. An informal continuance resulting from a crowded docket is not a good cause for extension of the period of limitation prescribed by the agreement. *Stroble v. Anderson*, 587 F.2d 830 (6th Cir.1978), cert. denied, 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). Or stated another way,

To imply a prosecutorial motion for a continuance solely on the basis of a trial setting beyond the speedy trial term, when no request for a continuance has ever been made, would be in clear contravention of the requirements of Article III(a). Moreover, such a result not only would render the 180 day speedy trial period illusory but also would foster the very uncertainty of disposition that the Interstate Agreement seeks to eliminate. *People v. Sevigny*, supra, at 1076.

 The state relies upon *Pethtel v. State*, 427 N.E.2d 891 (Ind.App.1981). In that case, four weeks before the expiration of the period of limitation, with defendant and counsel present, the court set the case for trial after the expiration of that period. The court followed the rule applicable to the speedy trial act of that state. That rule was declared to be "a defendant is not entitled to discharge where he has notice a trial will be set beyond the time period permitted by the Rule and yet does not object 'at a time when the court could ... grant him a trial date within the proper period.'" *Pethtel v. State*, supra, at 894. Compare *People v. Sevigny*, supra, in which the record did not establish voluntary acquiescence by the defendant.

It is not necessary for this court to accept or reject the doctrine of *Pethtel*. The docket call that resulted in the trial setting of April 11, 1983, was not held until well after the 180–day period of limitation had expired.

There is no suggestion in the record the defendant was not ready for trial when the case was set for January 10, 1983, or at any time thereafter. There was no good cause for continuance shown in open court. The case was not again called for a trial setting until after the period of limitation had expired. "A waiver is not ordinarily found from mere silence. The Agreement puts no affirmative obligation on the prisoner to alert the court of his IAD rights. We think it inappropriate to impose such an obligation." *Brown v. Wolff*, supra, at 907. No affirmative action of the defendant was shown to have delayed the trial.

The judgment must be reversed and Counts I and II of the information dismissed. Compare *United States v. Mauro*, supra; *United States v. Ford*, 550 F.2d 732 (2nd Cir.1977), aff'd sub nom *United States v. Mauro*, supra.

HOGAN, P.J., and PREWITT, C.J., concur.

CROW, J., recused.