

# SUPREME COURT OF MISSOURI
## en banc

STATE EX REL. STEVEN WISHOM,    )
    )
    Relator,    )
    )
v.    )    No. SC99949
    )
THE HONORABLE PAULA P.    )
BRYANT,    )
    )
    Respondent.    )

*Opinion issued August 29, 2023*

### ORIGINAL PROCEEDING IN PROHIBITION

Steven Wishom petitions this Court for a writ of prohibition barring the circuit court from taking any further action in Wishom's pending criminal case other than to dismiss the charges pending against him. In his writ petition, Wishom alleges the circuit court violated the Interstate Agreement on Detainers (IAD) when it continued his criminal case and failed to conduct a trial within 180 days of his request to dispose of his pending charges. Because the State waived any argument that Wishom failed to properly invoke his rights under the IAD and the circuit court lacked good cause to continue Wishom's trial when all the parties were ready and prepared to try his pending case within the 180-day period, the IAD mandates dismissal of Wishom's case. For these reasons, the Court makes permanent its

preliminary writ prohibiting the circuit court from taking any further action in Wishom's pending criminal matter other than dismissing the charges.

## Background

On January 29, 2020, the State filed a complaint in the St. Louis circuit court charging Steven Wishom with rape, sodomy, and sexual abuse.[1] Wishom was arrested and detained, and retained counsel appeared on his behalf on March 4, 2020. After posting a monetary bond, Wishom was taken into federal custody on criminal charges in May 2020. He ultimately pleaded guilty to those federal charges and was sentenced to 36 months in federal prison.

In February 2022, while Wishom was serving his federal sentence at a penitentiary in Kentucky, a warrant issued for his arrest on the state charges in St. Louis. Based on this warrant, a detainer was lodged with the federal penitentiary in Kentucky preventing his release after he finished serving his sentence. Pursuant the IAD, Wishom filed a request to dispose of the St. Louis charges. The circuit court and the State received this request on April 14, 2022. If properly invoked, the IAD required the State to dispose of Wishom's pending charges within 180 days of the State's and the court's receipt of his request to dispose of the charges.

In response to Wishom's request, the State, on April 20, 2022, sent the federal prison a request to take temporary custody of Wishom. The State's request for temporary custody

---

[1] A grand jury returned an indictment charging Wishom with the same offenses on March 5, 2020. Before the scheduled trial date, a substitute information in lieu of indictment was filed on October 7, 2022, charging him with rape and sodomy but not sexual abuse.

2

was made pursuant to a form titled "IAD/STATE WRIT – PROSECUTOR'S CERTIFICATION," which required the State to choose between two separate boxes indicating whether the request for temporary custody was made pursuant to the "IAD" or "State Writ." The State checked the IAD box, causing the form to state: "I, [Assistant Circuit Attorney], hereby request temporary custody of Steven Wishom via IAD." Federal officials at the penitentiary thereafter sent an offer to deliver temporary custody of Wishom to the State under the IAD to dispose of his pending charges. In addition, the federal prison sent a certificate of Wishom's inmate status, stating the length of his federal sentence, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility, and any decision of the parole agency governing his federal sentence. This certificate was received by the State and filed by the circuit court.

The State received custody of Wishom on June 8, 2022. On June 13, private counsel, who had not formally entered an appearance on Wishom's behalf, requested a short continuance to confer with Wishom until June 21.[2] During a June 21 hearing, the circuit court found Wishom indigent and appointed him a public defender. At the hearing, the State notified the court that Wishom's charged offenses were required to be disposed by October 23, 2022, to comply with the 180-day IAD deadline. The State also notified the court it filed a motion to compel Wishom to provide a biological sample for DNA testing and asked the court to set a date for a hearing on the motion. In response, the court

---

[2] The attorney appearing with Wishom on June 13 was not the same lawyer or associated with the lawyer who had previously appeared on Wishom's behalf on March 4, 2020.

3

scheduled a hearing on the State's motion and set Wishom's case for trial on October 17, 2022.

On June 23, 2022, a public defender appeared on Wishom's behalf, and Wishom, thereafter, filed objections to the State's motion to compel. In the objections, Wishom noted that October 11, 2022, not October 23, was the appropriate IAD deadline. After a hearing on the State's motion to compel, the court entered an order sustaining the motion to compel and rescheduled Wishom's trial for October 11.

On October 11, 2022—within the 180-day period after the State and circuit court received Wishom's IAD request to dispose of the pending charges—both the State and Wishom appeared in circuit court ready for trial. Despite two other non-IAD jury trials commencing on that date in other divisions of the circuit court, the court failed to secure a jury panel and continued the case on its own accord without request from either Wishom or the State. On October 14, Wishom filed a motion to dismiss the charges on the grounds the court failed to dispose of the charged offenses within the required IAD timeframe.

The circuit court held a hearing on October 18, 2022, regarding Wishom's motion to dismiss. At the hearing, and in response to Wishom's motion to dismiss, the State conceded Wishom "did do everything that he was supposed to do" to comply with the IAD and the State "showed up prepared for trial within the 180 day period." The State, nevertheless, asked the court to find good cause for continuing the October 11 trial setting based on the court's inability to secure a jury panel. The court agreed with the State's argument and overruled Wishom's motion to dismiss. In so doing, the court faulted Wishom for not requesting to be put on the circuit court's "priority list" for the October 11

4

trial setting to ensure the court secured a jury panel from the summoned jury pool and entered an order finding "good cause for the continuance as there was not a jury panel available."[3] The court and parties agreed to set the case for trial on October 31, 2022, with a backup date of January 30, 2023.

Wishom appeared October 31, 2022 in the circuit court again ready for trial, but the court again continued the case on its own accord to January 30, 2023. On January 27, 2023, Wishom sought a writ of prohibition from this Court prohibiting the circuit court from taking any further action in his pending criminal matter other than entering an order dismissing the charges against him. This Court issued a preliminary writ directing the circuit court to show cause why a permanent writ should not be entered.

## Standard of Review

This Court has jurisdiction to issue original remedial writs pursuant to article V, section 4.1 of the Missouri Constitution. The writ of prohibition is an "extraordinary remedy" and is appropriate:

> (1) to prevent the usurpation of judicial power when a lower court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted.

*State ex rel. T.J. v. Cundiff*, 632 S.W.3d 353, 355 (Mo. banc 2021) (internal quotation omitted). Courts have utilized this extraordinary remedy and issued remedial writs to

---

[3] The St. Louis circuit court, by administrative order, created the "priority list" to track and prioritize cases set for trial during the COVID-19 pandemic when in-person proceedings were limited. The order required judicial officers to submit a priority trial request to the presiding judge to request placement on the priority jury trial docket.

prevent a circuit court from proceeding in a case when the 180-day deadline to dispose of pending charges has expired in violation of the IAD. *See, e.g.*, *State ex rel. Suitor v. Stremel*, 968 S.W.2d 221, 225 (Mo. App. 1998); *State ex rel. Saxton v. Moore*, 598 S.W.2d 586, 592-93 (Mo. App. 1980).

## Analysis

*The Interstate Agreement on Detainers*

This case concerns the IAD's applicability to the disposition of the state charges pending against Wishom resulting in the detainer lodged with the federal penitentiary where he was serving a federal sentence. A detainer is "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Farish v. Mo. Dep't of Corr.*, 416 S.W.3d 793, 797 (Mo. banc 2013) (emphasis omitted) (quoting *Carchman v. Nash*, 473 U.S. 716, 719 (1985)). The harmful effect of detainers has been "well documented." *State ex rel. Kemp v. Hodge*, 629 S.W.2d 353, 355 (Mo. banc 1982). It is not uncommon for prison authorities to "accord[] detainers considerable weight in making decisions" regarding prisoner treatment. *United States v. Ford*, 550 F.2d 732, 737-38 (2d Cir. 1977). Historically, a "prisoner was often deprived of the ability to take advantage of many of the prison's programs aimed at rehabilitation, merely because there was a detainer lodged against him." *United States v. Mauro*, 436 U.S. 340, 359 (1978). An unresolved detainer, moreover, leaves the offender believing there is "little hope for his release[,]" *Kemp*, 629 S.W.2d at 355 (quoting E. Dauber, *Reforming the Detainer System: A Case Study*, 7 Crim. L. Bull. 669, 671 (1971)), and,

6

consequently, with "little inclination toward self-improvement." *Id.* (quoting *Smith v. Hooey*, 393 U.S. 374, 379 (1969)). As a result, unresolved detainers risk defeating the objective of the correctional system to rehabilitate the offender and reduce recidivism. *See id.* (quoting Dauber, *supra* at 671).

To combat the problems posed by unresolved detainers, the federal government and almost all states —including Missouri — have entered into the IAD. *See* 5 Wayne R. LaFave et. al., *Crim. Proc.* § 18.4(c) (4th ed. 2022); *Mauro*, 436 U.S. at 343-44; *Kemp*, 629 S.W.2d at 355. Missouri has codified the IAD in section 217.490.[4] The IAD applies to criminal charges pending against a prisoner while the prisoner is incarcerated in another jurisdiction's correctional system.[5] *Kemp*, 629 S.W.2d at 355. Its stated purpose is "to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." Section 217.490, art. I. The participating states agree to be bound by the terms of the IAD because detainers "produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." *Id.*

---

[4] All statutory references are to RSMo 2016. Missouri previously codified the IAD in sections 222.160-.220. *See Kemp*, 629 S.W.2d at 355.

[5] Missouri has also adopted the Uniform Mandatory Disposition of Detainers Law (UMDDL), currently codified in sections 217.450-.485. The UMDDL provides for the prompt disposition of detainers based on untried state charges pending in Missouri against a prisoner held within the Missouri Department of Corrections. *Kemp*, 629 S.W.2d at 354. A "basic principle of statutory construction is that statutes relating to the same subject matter, such as the [UMDDL] and the [IAD], are in pari materia and must be considered together." *Id.* at 359 (internal citation omitted).

To encourage the speedy disposition of lodged detainers, the IAD provides:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he **shall be brought to trial within one hundred eighty days** after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

*Id*. art. III, sec. 1 (emphasis added).

The IAD further provides:

If the appropriate authority shall refuse or fail to accept temporary custody of the person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in article III or article IV of this agreement, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

*Id*. art. V, sec. 3.

In this case, the State and the circuit court, on April 14, 2022, received Wishom's request under the IAD to dispose of his pending charges. If properly invoked, the 180-day time limit mandated by the IAD started running on that date. *Id*. art. III, sec. 1 ("[H]e shall be brought to trial within one hundred eighty days after he shall have caused to be delivered

8

to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction [his IAD request.]"); *Kemp*, 629 S.W.2d at 356 (holding the 180-day IAD period began upon receipt of the prisoner's request by both the prosecuting attorney and circuit court). The IAD, therefore, required the charges against Wishom to be dismissed if not tried or disposed within 180 days after the State and the circuit court received his request to dispose of the pending charges. Section 217.490, art. III, sec. 1; *Id*. art. V, sec. 3.

After receiving his request, the State accepted custody of Wishom under the IAD, and both parties appeared ready for trial on October 11, 2022—within 180 days after Wishom's request was received. The circuit court, however, failed to secure a jury panel to try Wishom on October 11 or otherwise dispose of the charges against him. The State now puts forth several reasons why the period of limitations the IAD imposed did not run on October 11 and Wishom's pending charges should not be dismissed. None of its arguments is availing.

*Waiver*

The State argues, for the first time in this appeal, that Wishom's rights under the IAD were never properly invoked because he failed to accompany his request for disposition of his charges with a certificate of his inmate status from the federal prison.[6] It is true, a prisoner must accompany a request to dispose of charges under the IAD with a certificate of inmate status in order to properly invoke the IAD. Section 217.490, art. III,

---

[6] The record reflects the State did receive a certificate of inmate status from the federal penitentiary where Wishom was incarcerated, but the certificate did not accompany his request for disposition of his charges.

9

sec. 1 ("The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of the commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner."). Without this certificate, the State may lack the information necessary to decide how to proceed on a prisoner's IAD request.[7] The certificate, therefore, is an essential requirement to invoke the provisions of the IAD.[8] *Id*. art. III, sec. 1.

The State, however, may waive a prisoner's compliance with the provisions of the IAD, as several appellate courts have recognized. *See, e.g.*, *Suitor*, 968 S.W.2d 221; *Saxton*, 598 S.W.2d 586. In *Suitor*, an Oklahoma prisoner filed a motion in the circuit court seeking disposition of a pending Missouri charge but failed to accompany his request with a certificate of inmate status from the prison warden. 968 S.W.2d at 222, 224. The prosecutor responded to the prisoner's request by sending an "Acceptance of Temporary Custody Offered in Connection with a Prisoner's Request for Disposition of a Detainer" to the warden of the Oklahoma prison. *Id.* at 222. The form set forth the prosecutor's

---

[7] Upon reviewing the certificate of inmate status, for example, the State may determine it an unwise use of resources to take temporary custody of a prisoner if the prisoner has a lengthy sentence in another jurisdiction and the interests of justice do not warrant pursuing the pending charges. In such cases, the State, in its discretion, may decide to remove the detainer or dismiss the case rather than pursue the charges.

[8] Missouri appellate courts have suggested including a certificate of inmate status is not essential to properly invoke the IAD. To the extent prior cases have so held, they should no longer be followed. *See, e.g.*, *State v. Severance*, 453 S.W.3d 278, 284 (Mo. App. 2014); *State v. Woods*, 259 S.W.3d 552, 557 (Mo. App. 2008); *Suitor*, 968 S.W.2d at 225.

acceptance of temporary custody and intent to bring the prisoner to trial within the IAD's specified timeframe. *Id.* The prisoner was not brought to trial within 180 days of his request, however, and sought a writ of mandamus from the court of appeals. *Id.*

The court of appeals granted mandamus relief. *Id.* It found the prosecutor's acceptance of custody under the IAD waived the requirement that the certificate of inmate status accompany his request for disposition of the pending charges. *Id.* at 224-25. Finding 180 days had elapsed between the prisoner's request and his motion for dismissal, the court of appeals ordered the charge dismissed. *Id.* at 225.

The court of appeals reached a similar result in *Saxton*, 598 S.W.2d 586. A detainer had been lodged against a federal prisoner in Oklahoma based upon untried charges in Missouri. *Id.* at 587. The prisoner sent a request for disposition of the charges to the prosecutor's office, attempting to invoke the IAD, but the prisoner failed to mail his request to the circuit court as the IAD required. *Id.* at 588. The State, however, mailed a form to the federal prison titled "Prosecutor's Acceptance of Temporary Custody Offered in Connection with a Prisoner's Request for Disposition of a Detainer." *Id.* In its communication with the federal penitentiary, the State "raised no objection to the procedure followed by the prisoner" and "formally declared the prosecutor's acceptance of the prisoner's custody for the purpose of trial, and declared the prosecutor's intention to bring him to trial within the time allowed by the [IAD]." *Id.* at 591-92. The court of appeals found the State thereby waived any objection to the prisoner's failure to notify the court as required by the IAD. *Id.*

11

As in *Suitor* and *Saxton*, the State here waived any objection it may have made that Wishom improperly invoked the IAD. After receiving Wishom's request to dispose of his pending charges pursuant to the IAD, the State forwarded the federal prison a form titled "IAD/STATE WRIT – PROSECUTOR'S CERTIFICATION." This form required the State to choose between two separate boxes indicating whether the request for temporary custody was made pursuant to the "IAD" or "State Writ." The State checked the IAD box, causing the form to state: "I, [Assistant Circuit Attorney], hereby request temporary custody of Steven Wishom via IAD[.]"[9] The State never objected and claimed Wishom failed to properly invoke his rights under the IAD. Further, as evidenced by the form, the State specifically received custody of Wishom with the intention to proceed to trial to dispose of the pending charges before the 180-day deadline expired pursuant to the IAD provision. Indeed, the State conceded at the October 18, 2022, hearing on Wishom's motion to dismiss that it believed Wishom "did do everything that he was supposed to do" to comply with the IAD. Having requested and accepted temporary custody of Wishom under the IAD and admitting Wishom complied with the IAD, the State conceded the IAD

[9] The State also filled out a section on the form reserved for requests for temporary custody pursuant to state writs and now suggests Wishom was brought to St. Louis pursuant to a state writ or writ *ad prosequendum*, rather than pursuant to the IAD. A writ *ad prosequendum* or other state writ is issued by the circuit court rather than a request for temporary custody made by a prosecutor and does not invoke the protections of the IAD in cases in which no underlying detainer has been lodged. *See Mauro*, 436 U.S. 340 at 360-61. Here, there was a detainer lodged against Wishom entitling him to the protections of the IAD, and the record clearly shows the circuit court entered no writ and the State requested and received temporary custody of Wishom to bring him to trial under the IAD despite filling out the section of the form reserved for use with state writs.

12

applied and waived any post hoc objection as to the sufficiency of Wishom's request to dispose of his pending charges.[10]  *Suitor*, 968 S.W.2d at 224-25; *Saxton*, 598 S.W.2d at 591-92.

*Good Cause*

The State also alleges good cause warranted continuing Wishom's trial due to the absence of jurors to hear Wishom's case.  Section 217.490, article III, section 1 provides that, "for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."  "Good cause," however, is not a license to evade the purpose and intent of the IAD.

The court of appeals from this state and courts in other jurisdictions have routinely held that a court's crowded trial docket does not, on its own, provide "good cause" to extend the IAD time period.  *See, e.g.*, *State v. Smith*, 686 S.W.2d 543, 548-49 (Mo. App. 1985); *State ex rel. Hammett v. McKenzie*, 596 S.W.2d 53, 58 (Mo. App. 1980); *Brown v. Wolff*, 706 F.2d 902, 906 (9th Cir. 1983); *Ford*, 550 F.2d at 743; *Haigler v. United States*, 531 A.2d 1236, 1244-45 (D.C. 1987); *State v. Gipson*, 670 S.W.2d 637, 639-40 (Tenn. Crim. App. 1984).  Rather, the circuit court is obligated to take affirmative steps to prioritize an IAD case as necessary to try the prisoner within the applicable time limits.  *Smith*, 686 S.W.2d at 548-49; *Hammett*, 596 S.W.2d at 58; *Brown*, 706 F.2d at 906; *Ford*,

---

[10] Even though the State checked the box indicating it was requesting temporary custody of Wishom from the federal prison pursuant to the IAD, the circuit court in its return to Wishom's writ petition contends the State merely requested temporary custody of Wishom for the court to conduct an indigency hearing and allow the State to obtain a buccal swab for DNA evidence.  As discussed above, the record clearly shows the State sought temporary custody of Wishom to bring him to trial under the provisions of the IAD.

550 F.2d at 743; *Haigler*, 531 A.2d at 1244-45; *Gipson*, 670 S.W.2d at 639-40. The Court is not unaware or unappreciative of the excessive case load trial courts must manage, but, absent good cause, circuit courts must give priority to IAD cases over other criminal and civil cases to ensure IAD cases are tried within the appropriate timeframe. *Hammett*, 596 S.W.2d at 58; *Gipson*, 670 S.W.2d at 639. Failure to do so warrants dismissal of the charges with prejudice. *Compare, e.g.*, *Smith*, 686 S.W.2d at 548-49; *Hammett*, 596 S.W.2d at 58-60, *with Commonwealth v. Dickson*, 434 N.E.2d 1284, 1285 (Mass. 1982) (finding "good cause" to continue pending charges beyond the IAD deadline when the court had to prioritize a murder case over an IAD case because the murder case involved many witnesses due to leave for an extended voyage overseas). These principles are in accordance with this Court's holding that "[t]he right to a speedy trial is an important right that the courts of this state are duty-bound to honor, even in the face of heavy trial dockets and competing demands for trial." *State ex rel. McKee v. Riley*, 240 S.W.3d 720, 731 (Mo. banc 2007). "Protracted and unreasonable delays in criminal cases due to crowded dockets cannot become routine." *Id.*

As noted, the circuit court in this case failed to try Wishom on October 11, 2022, within 180 days of receiving his IAD request, and failed to provide any reason on the record for continuing his case on that date. *See* section 217.490, art. III, sec. 1 (providing "that for good cause **shown in open court, the prisoner or his counsel being present**, the court having jurisdiction of the matter may grant any necessary or reasonable continuance" (emphasis added)). It was seven days later when the court finally proffered an explanation in open court as required under article III. The circuit court, on October 18, faulted

14

Wishom for not requesting to be put on the court's "priority list" to ensure the court secured a jury panel from the summoned jurors and found there was "good cause for the continuance [on October 11] as there was not a jury panel available."

Having received Wishom's IAD request, however, the circuit court was obligated to dispose or try Wishom's case within the applicable time limit. *Smith*, 686 S.W.2d at 548-49; *Hammett*, 596 S.W.2d at 58; *Brown*, 706 F.2d at 906; *Ford*, 550 F.2d at 743; *Haigler*, 531 A.2d at 1244-45; *Gipson*, 670 S.W.2d at 639. To this end the court—not Wishom—had the responsibility to take the affirmative steps necessary to ensure Wishom's case was tried or disposed. *Smith*, 686 S.W.2d at 548-49; *Hammett*, 596 S.W.2d at 58; *Brown*, 706 F.2d at 906; *Ford*, 550 F.2d at 743; *Haigler*, 531 A.2d at 1244-45; *Gipson*, 670 S.W.2d at 639-40. This included prioritizing Wishom's case over non-IAD cases to secure a jury panel. *Hammett*, 596 S.W.2d at 58; *Gipson*, 670 S.W.2d at 639-40; *see also Smith*, 686 S.W.2d at 548-49. The St. Louis circuit court secured jury panels for at least two non-IAD cases on October 11, refuting any notion it was unable to try Wishom on that date. And there is no indication that good cause otherwise existed to prioritize either of the two non-IAD cases over Wishom's case justifying the continuance.[11] Accordingly, the post hoc justifications for a continuance the circuit court proffered do not constitute "good cause" under the IAD.[12] *Smith*, 686 S.W.2d at 549; *Hammett*, 596 S.W.2d at 58; *c.f. McKee*, 240 S.W.3d at 731.

---

[11] One of the non-IAD cases tried on October 11 was a civil case.

[12] In its return to Wishom's writ petition, the circuit court claims the trial was delayed because the State was not ready for trial due to pending DNA analysis and the resignation

*Tolling*

The State also contends the IAD imposed limitation period was tolled during the time it took for Wishom to transition legal representation. The State is correct that Wishom's actions could waive or toll the IAD's time limitations. "It is generally held that any delay of a prisoner's trial which results from his affirmative action or agreement is not to be included in the period of limitation." *Smith*, 686 S.W.2d at 547 (internal citations omitted). Retained counsel initially entered an appearance on behalf of Wishom on March 4, 2020. On June 13, 2022, a different attorney who had not entered an appearance on Wishom's behalf moved for a continuance until June 21 to confer with Wishom. The circuit court sustained the motion and, on June 21, found Wishom indigent and appointed him a public defender. The public defender entered his appearance on June 23. Thus, Wishom was unrepresented for one to three days, and there is no evidence the process of transitioning counsel did, in fact, delay the trial. *C.f. id.* at 548 (finding a defendant's request for disclosures prior to trial did not provide a basis for extending the IAD time period because there was "no evidence the process of discovery did in fact delay the trial"). Even if the IAD 180-day deadline was tolled for nine to eleven days to account for the short continuance his counsel requested on June 13 and the few days Wishom was unrepresented, the IAD 180-day deadline would have been extended only to

---

of the assigned prosecutor. The record refutes this claim, however, as the State appeared ready for trial on October 11 as it stated at the October 18, 2022 hearing on Wishom's motion to dismiss.

16

October 20-22, 2022, and Wishom was not brought to trial or his case disposed by those dates.[13]

Finally, the State argues the IAD deadline was tolled by Wishom's agreement to trial dates beyond the 180-day deadline. "If a defendant acquiesces to a trial date beyond the 180-day period, … the statute is tolled." *State v. Jackson*, 155 S.W.3d 849, 852 (Mo. App. 2005). Wishom did agree to resetting his trial to later in October or to a backup date of January 30, 2023. Wishom cannot be faulted for this, however, as he had maintained since June 23, after the public defender was appointed to represent him, that he desired an October 11, 2022, trial—within 180 days of his initial IAD request. He agreed to rescheduling the October 11 trial date only *after* the circuit court failed to try his case on October 11 and overruled his motion to dismiss. *Cf. State v. Overton*, 261 S.W.3d 654,

---

[13] The State also contends a motion to withdraw filed by Wishom's counsel on April 12, 2021, tolled the 180-day deadline until the entry of Wishom's public defender on June 23, 2022, because Wishom was essentially unrepresented during this time period. Contrary to the State's argument, Wishom remained represented throughout this period, at least until June 21, 2022, when the circuit court found Wishom indigent and appointed the public defender. Wishom's lawyer was never granted leave to withdraw from representing Wishom until new counsel was appointed on June 21. *State v. Wilkinson*, 423 S.W.2d 693, 697 (Mo. 1968) (citing *State v. Mimms*, 349 S.W.2d 925, 927 (Mo. 1961)) ("[T]he determination of whether counsel should be permitted to withdraw from a case is generally within the sound discretion of the trial court."). Wishom's lawyer, therefore, was obligated to represent Wishom despite the pending motion to withdraw, and the 180-day deadline was not tolled. Rule 4-1.3, cmt. 4 ("Unless the relationship is terminated as provided in Rule 4-1.16, a lawyer should carry through to conclusion all matters undertaken for a client."); Rule 4-1.16(c) ("A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation unless the lawyer has filed a notice of termination of limited appearance."); *see also State v. Teter*, 665 S.W.3d 306, 312 (Mo. banc 2023) ("[Defendant's] counsel [had] the responsibility to represent him until discharged[.]").

661 (Mo. App. 2008) (holding the defendant acquiesced to a trial date beyond the 180-day IAD time limit by failing to object to the trial date at a hearing occurring before 180-day period expired).[14]  Therefore, Wishom's actions did not waive, toll or otherwise justify extending the 180-day timeline the IAD mandates.

## Conclusion

Because the State waived any argument that Wishom failed to properly invoke his rights under the IAD and the circuit court lacked good cause to continue Wishom's case beyond the time limitation prescribed by the IAD, writ relief is warranted.  The preliminary writ is made permanent, and the circuit court is prohibited from taking any further action in Wishom's case other than dismissing the pending charges.

_____
W. Brent Powell, Judge


Russell, C.J., Powell, Breckenridge, Fischer,
Ransom and Wilson, JJ., concur.  Draper, J., not participating.

---

[14] Moreover, the circuit court also continued Wishom's October 31 trial date, and, on that date, Wishom renewed his motion to dismiss for violation of the IAD.

18