STATE of Missouri,
Plaintiff-Respondent,

v.

Daniel Max SOLOWAY,
Respondent-Appellant.

No. 11492.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 7, 1980.

Harry Rupert Stafford, Jr., Marshfield, for defendant-appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

MAUS, Judge.

Following a jury verdict of guilty the appellant was sentenced to four years' imprisonment for second degree burglary. He appeals presenting two points of alleged error. As one of those points concerns the sufficiency of the evidence, a brief statement of the facts is necessary.

At the close of business on Saturday, January 29, 1977, the proprietor of a drugstore in Marshfield closed and locked the two doors to the store, one in the front and one in the back. In response to a call, a

police officer arrived at the store shortly after 4:46 a. m. on January 30, 1977. He parked the police car so that the headlights were shining toward the store. The officer saw a shadowy figure moving about in the store. He radioed for help and moved to a place where he could watch both the front and rear doors. In about five minutes the defendant pushed open the front door and walked out. At gunpoint he was forced to lie spread-eagle in front of the police car. In response to a question, the appellant told the officer he was alone. Nevertheless, about that time a second man walked from the front door. The second man was likewise subdued and when help arrived both men were taken into custody.

An inspection of the building revealed the front door had been pried open. The narcotics cabinet, which was kept locked, had been moved from the wall and forced open. Drugs were scattered on the floor. Also in the vicinity on the floor was a tire tool and a white laundry bag containing some drugs from the cabinet. A pry bar was on the floor behind a counter on which the cash register was located. A pair of jersey gloves were found on the floor in the front part of the store. They were similar to gloves the appellant was wearing. The evidence does not show whether or not the second man was wearing gloves.

The appellant's second point is that the state did not make a submissible case because the evidence did not show he intended to commit a crime in the store. In making this contention he emphasizes the fact that when he was walking toward the officer with his hands in the air he said, "Don't shoot, don't shoot, just trying to get warm, don't shoot." He then presents the hypothesis, the appellant did not testify, the second man could have opened the store and appellant went in to get warm. "In testing the sufficiency of evidence in a criminal prosecution by a motion for a judgment of acquittal, the facts . . . must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded." *State v. Strong*, 484 S.W.2d 657, 661 (Mo.1972). The

jury was certainly entitled to, and did, reject the appellant's effort to explain his presence in the drugstore. "Clear evidence of a forcible entry coupled with defendant's presence inside a building is sufficient evidence to support a finding of guilty on a charge of second degree burglary." *State v. Johnson*, 533 S.W.2d 629, 631 (Mo.App. 1976). The state did make a submissible case. *State v. McGee*, 592 S.W.2d 886 (Mo. App.1980); *State v. Zinn*, 562 S.W.2d 784 (Mo.App.1978).

The appellant's remaining point is that the trial court erred in overruling his motion to dismiss because the appellant was not brought to trial within the 180–day period required by the Uniform Mandatory Disposition of Detainers Law, V.A.M.S. §§ 222.080–222.150. This point requires consideration of the proceedings prior to appellant's trial. The record on this issue is not clear, in many instances the transcript merely reflecting a filing and both parties making reference in argument on the motion to matters not otherwise in the record. However, as gleaned from these sources, the following is a summary of the pertinent pre-trial proceedings.

The trial of the appellant, who initially was represented by an attorney, was set for October 18, 1977. On that date the appellant appeared without an attorney and the case was continued to November 15, 1977. On that day the appellant failed to appear and his bond was forfeited. On August 17, 1978, the clerk filed a letter from the appellant to the circuit judge reciting that he was in prison in Illinois and inquiring if the Missouri case was still pending. On that day the clerk replied that his bond had been forfeited and the case was still pending. On August 28, 1978, the appellant's pro se motion to dismiss for want of prosecution was filed. It was overruled on September 19, 1978. On November 27, 1978, there was filed appellant's pro se motion to dismiss and/or demand for trial. This motion in general alleged appellant had been sentenced in Illinois and was incarcerated and demanded he be brought to trial in Webster County or the charges dismissed. On

March 2, 1979, appellant again wrote the circuit judge, enclosing copies of his prior letter and motions. The prosecuting attorney in argument stated he received "the certificates", apparently referring to the certificate required by § 222.160, Art. III, in May, 1979. On or about June 12, 1979, the appellant was returned to Webster County. On June 22, 1979, there was filed a copy of Agreement on Detainers Form V dated March 12, 1979, and a copy of Agreement on Detainers Form VII, also dated March 12, 1979. At some undisclosed dates during this period of time the appellant was in Kentucky at his request for 62 days for the disposition of criminal charges filed there.

As stated, appellant cites §§ 222.080–222.-150 and argues that his motion of November 27, 1978, was effective to activate the time limitation of 180 days contained in § 222.100. These sections are applicable when a person is "imprisoned in a correctional institution of this state . . .". § 222.080. They do not apply to the appellant who was imprisoned in Illinois.

■ However, giving the defendant the benefit of the doubt, it is probable he meant to cite §§ 222.160 to 222.220 (Agreement on Detainers). These sections are applicable to "persons already incarcerated in other jurisdictions . . .". Nevertheless, these sections do not aid the defendant. The act is not self-executing and to invoke the limitations contained therein, the prisoner must comply with the statutory provisions. *State ex rel. Hammett v. McKenzie*, 596 S.W.2d 53 (Mo.App.1980); *State v. Carlson*, 258 N.W.2d 253 (N.D.1977); *Ekis v. Darr*, 217 Kan. 817, 539 P.2d 16 (1975). The appellant's motion did not trigger the 180–day limitation contained in § 222.160 Article III for several reasons. First, it is not shown that a detainer had been filed when the motion was filed. *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). Second, even assuming the motion was worded in such a manner as

to constitute the notice and request for a final disposition,[1] it is not shown that a copy was received by both the court and the prosecuting attorney. *State ex rel. Hammett v. McKenzie*, supra. Third, it is required that a certificate of the warden or other official having custody of the appellant be forwarded to both the court and the prosecuting attorney. The appellant's counsel in open court admitted the admitted the appellant "failed to comply . . . in that he had not had these things certified by the warden". The only reference to a certificate was the prosecutor's statement "the certificate" was received during May, 1979. In any event, it is not shown that the required certificate was received by both the court and prosecuting attorney on November 27, 1978.

■■ Nevertheless, the appellant argues that his motion was sufficient to invoke the 180–day limitation period on November 27, 1978, because the state accepted his demand for trial on March 12, 1979, apparently referring to the forms bearing that date and filed June 22, 1979. The connotation of the terms "accepted his demand for trial" is not clear. For a demand for trial to trigger the 180–day period, it must be made in the manner required by § 222.160, Art. III. Form V does not establish that was done as that form is a request for temporary custody initiated by the state. Form VII is designed to be used as an acceptance of an offer of temporary custody resulting from a prisoner's request for disposition of a detainer. However, the record does not show why both forms were executed or whether or not either or both forms were actually used, and if so, when. Form VII is incomplete as the blank for the date of the warden's letter was not filled in. While the fact this incompleted form dated March 12, 1979, was filed on June 22, 1979, may be an indication that a letter from the warden was received at sometime, it is not evidence the appellant complied with § 222.160 on

---

1. For a discussion of the importance of the prisoner making it clear he is proceeding under the Act see *Ekis v. Darr*, 217 Kan. 817, 539 P.2d 16 (1975). A petition for withdrawal and dis-

missal, similar to appellant's motion did not meet the statutory requirements in *State v. Savage*, 522 S.W.2d 144 (Mo.App.1975).

November 27, 1978. The contrary is true as the only evidence that a certificate of the warden was ever received was the prosecuting attorney's statement that it was received in May, 1979. This argument is not valid.

As the appellant did not establish that the 180–day period was triggered at any critical date, it is not necessary for this court to determine if the 62 days the appellant spent in Kentucky should be counted in that 180 days. See *State ex rel. Hammett v. McKenzie*, supra. The judgment is affirmed.

BILLINGS, P. J., and PREWITT, J., concur.