**STATE of Maine**

v.

**Dana ROSE.**

Supreme Judicial Court of Maine.

Argued Nov. 21, 1991.
Decided Feb. 24, 1992.

Michael Cantara, Dist. Atty., David Gregory (orally), Christopher Pazar, Asst. Dist. Atty., Alfred, for plaintiff.

Thomas Van Houten (orally), Sanford, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, and COLLINS, JJ.

WATHEN, Justice.

The defendant, who was confined in an Arizona prison at the time of his Maine indictment and was returned to Maine to stand trial pursuant to the Interstate Compact on Detainers (ICD), appeals his convictions in the Superior Court (York County, *Brodrick, J.*). He contends that his trial did not start within the 180-day time period prescribed by the ICD and that inculpatory statements he made to the police officer bringing him back to Maine should not have been admitted at trial. We find no violation of the ICD but conclude that defendant's statements should have been suppressed. We vacate the convictions.

On November 6, 1989, a grand jury indicted defendant Dana Rose on one count each of gross sexual misconduct, 17–A M.R.S.A. § 253 (Supp.1988), unlawful sexual contact, 17–A M.R.S.A. § 255 (Supp. 1988), and burglary, 17–A M.R.S.A. § 401 (1983). The State of Maine thereafter lodged a detainer against defendant, then a prisoner at the Arizona State Prison in Tucson. Pursuant to the ICD, defendant subsequently was brought back to Maine to stand trial here. On a jury verdict, the Superior Court entered a judgment of conviction against defendant on all three counts. This appeal follows.

### I.

### *Time Limitation of Interstate Compact on Detainers*

Defendant first challenges the denial by the Superior Court (*Cole, J.*) of his motion to dismiss the indictment with prejudice. He contends that he was not brought to trial within the time limitations laid down by the ICD, 34–A M.R.S.A. §§ 9601–9609 (1988), and thus the indictment must be dismissed pursuant to 34–A M.R.S.A. § 9605(3). We reject his contention.

The ICD allows a prisoner in a penal institution of one state to initiate a final disposition of another state's untried indictment on the basis of which a detainer has been lodged against him. *See* 34–A M.R.S.A. § 9603(1). When a prisoner so initiates a final disposition, the ICD mandates that he be brought to trial "within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court ... written notice of ... his request for final disposition to be made of the indictment." *Id.* The same section, however, allows a court to grant "any necessary or reasonable continuance" of the 180–day time limit. In addition, 34–A M.R.S.A. § 9606 provides that the running of the 180–day period "shall be tolled whenever and for as long as the prisoner is unable to stand trial." For purposes of the statute, a defendant is unable to stand trial during "all those periods of delay occasioned by the defendant." *United States v. Taylor,* 861 F.2d 316, 321 (1st Cir.1988)

(applying parallel 120–day limitation of ICD). "[A] defendant waives the [180–day] limitation during the time it takes to resolve matters raised by him." *Id.*

■ In the case at bar, defendant, after being notified of the Maine detainer, completed and signed the ICD Form II entitled "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments." That ICD Form II was delivered to both the York County District Attorney's office and the York County clerk of the Superior Court on February 9, 1990, thus triggering the 180–day statutory period for the commencement of defendant's trial. *See* 34–A M.R.S.A. § 9603(1); *State v. Beauchene,* 541 A.2d 914, 917 (Me.1988). The jury for defendant's trial was sworn on October 15, 1990, and thus a total period of 248 days elapsed before the State brought defendant to trial on the Maine indictment. There are, however, at least 68 days that are readily excluded from that 248–day period so as to bring defendant's trial within the 180–day limitation of the ICD.

■ After appointment of counsel and arraignment, defendant filed two discovery motions on March 2, and before the court decided those motions, defendant filed on March 9 a motion to suppress statements he made to the officer bringing him back from Arizona. That suppression motion was first scheduled to be heard on May 9, 1990. The 68 days of delay from March 2 to May 9 cannot be charged against the State and are appropriately excluded from the 180–day calculation. Thus, without even examining the circumstances beyond May 9, we find a total of 68 days of delay ascribable to defendant—enough to defeat defendant's contention that the State failed to bring him to trial within the time required by the ICD.

### II.

### *Admissibility of Defendant's Statements to Police Officer*

■ Prior to trial, defendant moved to suppress incriminating statements he gave to a police officer while being transported to Maine by plane. He contended that the

statements resulted from an interrogation that violated the rule of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the Fifth and Sixth Amendments of the United States Constitution. Although he did not cite the specific authority that he now relies on, he preserved both a Fifth and Sixth Amendment claim. The Superior Court (*Cole, J.*) denied his motion and his confession was admitted in evidence at trial.

The facts relevant to the suppression issue may be summarized as follows: After the issuance of the grand jury indictment and an arrest warrant, a district attorney in Maine filed a detainer against defendant with the Arizona State Prison. Pursuant to the ICD, defendant was given notice of the untried indictment and responded by filing a written request for disposition of the indictment. By signing that written form, defendant agreed to waive extradition and be transported to Maine for trial, returned to Arizona after disposition, and delivered back to Maine to serve any sentence that might result. 34–A M.R.S.A. § 9603(5) (1988). Certified copies of his written request for disposition were filed with the Superior Court and the appropriate district attorney's office in Maine. His written request included the statement circled by him: "I request the court to appoint counsel." Upon receiving defendant's response, the district attorney arranged for the investigating officer to travel to Arizona, arrest defendant, and return with him to Maine for trial. The officer went to Arizona armed with a prepared typewritten list of 160 questions to pose to defendant. While riding from the prison to the airport, the officer told defendant "that once [they] got on the plane [he] was going to advise him of *Miranda* and that if [defendant] wished to talk with [him] he could." Defendant answered that he might "want to talk to a lawyer, but that he would think about it." Defendant initiated no further conversation, but when given a *Miranda* warning on the plane, he waived his rights and agreed to talk. The officer posed all 160 questions, interrupting the interrogation only for another *Miranda* warning after a brief stop in Chicago. At the end of the flight from Arizona to Maine, the State had a confession. Once in Maine, defendant was provided with counsel and arraigned.

The Sixth Amendment guarantees the assistance of counsel at trial and at "earlier, critical stages in the criminal justice process where the results might well settle the accused's fate and reduce the trial itself to a mere formality." *Maine v. Moulton*, 474 U.S. 159, 170, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985) (citations and quotations omitted). "Whatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him...." *Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977). Moreover, after the initiation of formal charges, the Sixth Amendment guarantees the accused "the right to rely on counsel as a 'medium' between him and the State." *Maine v. Moulton*, 474 U.S. at 176, 106 S.Ct. at 487. In the present case, there can be no dispute that the right to counsel had attached. Criminal proceedings had been initiated and defendant had responded to the charges by inviting the State of Maine to transport him to Maine for trial.

In *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), the Supreme Court dealt with two unrelated cases in which defendants arrested for murder made a routine request for counsel at their initial arraignments. In each instance, police officers were present at the arraignment. Before the defendants had the opportunity to consult with counsel, police officers, after advising them of their *Miranda* rights, questioned them and obtained confessions. The Michigan Supreme Court had held that the confessions should be suppressed on the theory that the police are not free to ignore a defendant's unequivocal request for counsel. The United States Supreme Court upheld the Michigan court and adopted, for purposes of the Sixth Amendment, the rule announced in *Edwards v. Arizona*, 451 U.S. 477, 101

S.Ct. 1880, 68 L.Ed.2d 378 (1981), with respect to the Fifth Amendment. The Court reasoned that the assertion of the right to counsel is "no less significant, and the need for additional safeguards no less clear," when the request for counsel is based on the Sixth Amendment. *Michigan v. Jackson,* 475 U.S. 625, 636, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631 (1986). The Court concluded as follows:

> We thus hold that, if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid.

*Id.*

Admittedly, there is one factual dissimilarity between the present case and *Jackson*—defendant's request for counsel was not delivered during arraignment. Nonetheless, he formally communicated his unequivocal request in writing to the court and the prosecutor through the only means afforded him under the law. 34–A M.R.S.A. § 9603(2). Given the fact that he was a prisoner in another state, he could not have done more to inform the State that he desired counsel to serve as a medium with respect to the charges that had been initiated against him. Rather than honoring his request, the State knowingly exploited the opportunity presented during the flight to Maine by questioning him in the absence of counsel. The State has an affirmative obligation under the Sixth Amendment to respect and preserve the accused's choice to seek the assistance of counsel. *See Maine v. Moulton,* 474 U.S. at 171, 106 S.Ct. at 484. "[K]nowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity." *Id.* at 176, 106 S.Ct. at 487.

Defendant's Sixth Amendment right to effective representation at trial was significantly impaired because the State ignored his formal and unequivocal request for counsel after proceedings had been initi-ated by a grand jury indictment, the issuance of a warrant of arrest, a detainer, and a request for prosecution under the ICD. Because defendant's request for counsel was not honored, the holding in *Michigan v. Jackson* requires that his subsequent waiver for the police-initiated interrogation be declared invalid.

In the context of the Fifth Amendment and the privilege against self-incrimination, the Supreme Court has ruled that:

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards v. Arizona,* 451 U.S. at 484, 101 S.Ct. at 1884–85. In the typical situation contemplated in *Miranda* and *Edwards,* the defendant is first taken into custody for purposes of interrogation and given his *Miranda* warning, and then invokes his right to have counsel present during questioning. In the instant case, defendant, an inmate in a state prison, was in custody at all relevant times. While in custody and subject to the inherently compelling pressures of an environment dominated by agents of the state, he invoked his right to counsel before his interrogator had the opportunity to inform him that he had such a right. Given the fact that he was in custody and subject to interrogation, no rational purpose would be served by distinguishing between a request for counsel made before a *Miranda* warning and one made after such a warning. On somewhat similar facts, the Tenth Circuit Court of Appeals recently suppressed evidence and held that the fact that a defendant in custody "invoked his right to counsel before the police were required to inform him of that right is

irrelevant." *United States v. Kelsey*, 951 F.2d 1196 (10th Cir.1991). *Cf. State v. Lavoie*, 562 A.2d 146 (Me.1989) (precustodial assertion of right to remain silent does not preclude interrogation once defendant is taken into custody and given *Miranda* warnings). In the final analysis, "it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." *Edwards*, 451 U.S. at 485, 101 S.Ct. at 1885. Thus, in this unique case, the officer's interrogation of defendant violated the Fifth Amendment as well.

The entry is:

Judgments of conviction vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

GLASSMAN, CLIFFORD and COLLINS, JJ., concurring.

McKUSICK, Chief Justice, with whom ROBERTS, Justice, joins, dissenting in part.

Although I concur in Part I of the court's opinion finding no violation of the speedy trial provisions of the Interstate Compact on Detainers, I dissent from Part II. I would affirm defendant Rose's convictions in all respects. In Part II of its opinion, the court misapplies two federal prophylactic rules, by using those rules in ways not supported by the controlling federal case law. Furthermore, in each instance the court ignores Maine's own well-established rule of appellate procedure that requires unpreserved error to be reviewed only for obvious error.

A.

Contrary to the court's holding (Maj. at 27–28), it appears clear to me that the federal prophylactic rule of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), was never intended by its creator, the United States Supreme Court, to be triggered on the facts of the present case. It is apparent from the very language of the *Edwards* opinion that the *Edwards* prophylactic rule (created to support the Fifth Amendment right to counsel during custodial interrogation protected by the rule of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) bars only the *re*interrogation of a defendant who has during a prior interrogation expressed his desire to have counsel present during interrogation:

> [W]hen an accused has invoked his right to have counsel present *during custodial interrogation*, a valid waiver of that right cannot be established by showing only that he responded to *further* police-initiated custodial interrogation even if he has been advised of his rights. ... [A]n accused, ... having expressed his desire to deal with the police only through counsel, is not subject to *further* interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards v. Arizona*, 451 U.S. at 484–85, 101 S.Ct. at 1884–85 (emphasis added) (quoted in the court's opinion at p. 27).

*Edwards* applies only to the later interrogation of a defendant when that defendant has requested counsel during prior custodial interrogation.[1] Whatever may be said of

---

1. *United States v. Kelsey*, 951 F.2d 1196 (10th Cir.1991), cited by our court (op. at 28), involved facts very different from those of the case at bar. *Kelsey* recognized that the *Edwards* prophylactic rule is triggered only when a defendant's request for counsel has been made during custodial interrogation. *Id.* at 1199. Contrary to our court's apparent reading of the *Kelsey* opinion, the Tenth Circuit did not disregard the fact that the earlier request to have counsel during questioning must have come during interrogation of the defendant in custody. Rather, the Tenth Circuit construed the

circumstances surrounding Kelsey's request that he have counsel during questioning to be the equivalent of interrogation while he was in custody—and, for that reason only, said that "the fact that Kelsey invoked his right to counsel before the police were required to inform him of the right is irrelevant." *Id.* at 1199. The Tenth Circuit went on to explain:

> It is clear from the exchange between Kelsey and the police [at Kelsey's home] that the police intended to question Kelsey ... at his home, and that *the police understood Kelsey to be invoking his right to counsel during ques-*

defendant Rose's circling of statement "B" on his ICD Form II, thereby indicating his desire that counsel be appointed for him, that circling was not made during or in connection with custodial interrogation. Thus, that action cannot under *Edwards* require the suppression of statements made by Rose during the plane trip back to Maine. The interrogation on that plane trip was the first and only interrogation of Rose and was certainly not the "further interrogation" referred to in *Edwards*.[2]

Not only do I disagree with the court that *Edwards* is triggered on these facts, I also stress that the court in any event cannot discuss the *Edwards* issue outside the realm of obvious error. Defendant Rose never argued to the Superior Court that his circling of statement "B" on his ICD Form II triggered the *Edwards* prophylactic bar against reinterrogation.[3] When as here defendant's belated argument was never brought to the attention of the trial court, we may review only for obvious error the trial court's failure on its own initiative to apply the prophylactic rule of *Edwards*. *See State v. True*, 438 A.2d 460, 467–69 (Me.1981); *see also State v. Thornton*, 485 A.2d 952, 953 (Me.1984). Maine's long-standing obvious error rule should prevent us from vacating defendant Rose's convictions on an issue he never brought to the trial court's attention.

### B.

The court also determines that defendant Rose's waiver of his Sixth Amendment right to counsel, even though it was voluntary, knowing and intelligent, is invalidated

by another federal prophylactic rule, that of *Michigan v. Jackson*, 475 U.S. 625, 636, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631 (1986). (See op. at 25–27). Thus, the court concludes, the statements he made to Officer Boston en route to Maine are not admissible in evidence. That determination misapplies *Michigan v. Jackson*, a case that was decided in 1986 by a closely divided Supreme Court and that because of factual differences constitutes doubtful precedent for the case at bar. The difference between a defendant's demanding counsel at a formal arraignment proceeding and his merely checking off the counsel question on a detainer form makes it far from likely that the Supreme Court would extend *Michigan v. Jackson* to apply to facts like those now before us. It is a quantum leap to say that the form check-off is "an arraignment or similar proceeding." 475 U.S. at 636, 106 S.Ct. at 1411. Significantly, the Court has since 1986 refused to apply extensions of the *Edwards*-type Fifth Amendment prophylactic rule to the Sixth Amendment right to counsel. *Compare Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988) (*Edwards* Fifth Amendment rule applied to interrogation about a different offense), *with McNeil v. Wisconsin*, — U.S. —, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) (*Michigan v. Jackson* not extended to bar interrogation about a different offense).

It is equally true as with the *Edwards* analysis that any error on the part of the Superior Court in failing on its own initiative to extend the prophylactic rule of *Michigan v. Jackson* to the present facts must be reviewed only for obvious error;

---

*tioning.* Recognizing the import of Kelsey's request, *the police stated that if they allowed him to see his lawyer they could not question him further.* We thus conclude that Kelsey's request for counsel was sufficient to bring this case within the ambit of *Edwards*. *Id.* at 1199 (emphasis added).

**2.** Our court seems to focus on the fact that defendant Rose was in custody "at all relevant times" as if custody alone were sufficient to trigger *Edwards*. Clearly that is not so. The court rather obliquely refers to defendant having been "in custody and subject to interrogation" at the time he filled out the ICD Form II. (Maj. at 27). The fact remains that however

"subject to interrogation" defendant was at that time, he was not actually being interrogated, and hence *Edwards* is inapplicable to these facts.

**3.** Rose's only argument to the trial court was in essence that the statement made in the car on the way to the airport, that "he may want to talk with a lawyer first but he would think about it," triggered his right to counsel under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). There is sufficient evidence to support the trial court's finding of fact that Rose's statement in the car did not constitute a request for counsel.

the very first time defendant made the argument that my colleagues now find persuasive was when he filed his reply brief on appeal to this court. The *True* test of "obvious error" involves a weighing of both the nature of the error and the magnitude of its adverse consequences. *See State v. True*, 438 A.2d at 468–69. The test is a "demanding one" [4] and reflects "the great reluctance with which an appellate court will reverse a trial court judgment on the basis of an error that was not called to the attention of the judge at the time it occurred." *Id.* at 469. It requires us to make a two-pronged analysis:

> The particular circumstances, weighed with careful judgment, will determine whether the obviousness of the error and the seriousness of the injustice done to the defendant thereby are so great the Law Court cannot in good conscience let the conviction stand.

*Id.* In the case at bar, the Superior Court's failure on its own initiative to extend the prophylactic rule of *Michigan v. Jackson* [5] (where counsel was demanded by the defendant at his arraignment) to defendant's check-off of the counsel box on his ICD Form II neither constituted so obvious an error nor worked so serious an infringement of defendant's substantive right to counsel that we cannot in good conscience let defendant's conviction stand.

First, the alleged error is by no means obvious. As already discussed, the *Michigan v. Jackson* prophylactic rule is a federal rule crafted by the United States Supreme Court. It is not at all clear that the Court would stretch that rule to apply to facts like those of the present case. That uncertainty, even if resolved in favor of defendant, shows that the trial court's admission of defendant's statements was not an obvious violation of *Michigan v. Jack-*

*son.* Second, any injustice actually worked on defendant and his substantive Sixth Amendment right to counsel is difficult, if not impossible, to perceive. Before any questioning, defendant was fully informed of his right to counsel and, as found by the trial court, he voluntarily, knowingly, and intelligently waived that right. Again I emphasize that the *Michigan v. Jackson* prophylactic rule is not a constitutional right but rather is merely a procedural mechanism for protecting the Sixth Amendment right to counsel. The denial of the benefit of that prophylactic rule does not by itself constitute the kind of substantive injustice at trial that the obvious error rule is designed to recognize and correct. The Sixth Amendment standing by itself does not prevent a defendant from knowingly and intelligently waiving his right to counsel in the course of a police interrogation, even after his right to counsel has attached by virtue of an indictment and his arrest. *See Michigan v. Harvey*, 494 U.S. 344, 349, 110 S.Ct. 1176, 1180, 108 L.Ed.2d 293, 303 (1990) (citing *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988)). Defendant Rose signed exactly such a waiver of counsel before being questioned on the trip back from Arizona. On appeal defendant shows no actual prejudice to him beyond the admission in evidence of his own voluntary, knowing, and intelligent statements made after being fully informed of his right to have counsel present during questioning. The substance of his Sixth Amendment right to counsel has been fully respected.

The court's simultaneous misapplication of two federal prophylactic rules and its disregard of Maine's long-standing obvious error rule of appellate review lead me to

---

**4.** As the First Circuit has stated:
> The ["plain error" or "obvious error"] doctrine focuses our attention only on blockbusters: those errors so shocking that they seriously affect the fundamental fairness and basic integrity of the proceedings conducted below.

*United States v. Griffin*, 818 F.2d 97, 100 (1st Cir.1987).

**5.** In *Michigan v. Harvey*, 494 U.S. 344, 349, 110 S.Ct. 1176, 1180, 108 L.Ed.2d 293, 303 (1990), the Supreme Court referred to *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), as laying down a "prophylactic rule" providing a procedural safeguard that is not itself a right protected by the Constitution, but is "instead [a measure] designed to ensure that constitutional rights are protected."

dissent. I would affirm defendant Rose's convictions.