**STATE of Missouri ex rel. Vance Roy CLARK, Relator–Appellant,**

v.

**Honorable Douglas E. LONG, Jr., Circuit Judge, Division I, 25th Judicial Circuit, Pulaski County, Missouri, Respondent.**

No. 18942.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 23, 1994.

Robert Wolfrum, St. Louis, for relator-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Kenny C. Hulshof, Asst. Atty. Gen., Jefferson City, for respondent.

*PROCEEDING IN PROHIBITION*

*PRELIMINARY WRIT MADE ABSOLUTE*

PER CURIAM:

This court issued its preliminary writ prohibiting Respondent from proceeding to try Relator (Defendant) on a two-count information charging first degree murder and armed criminal action. The issue is whether the court lost jurisdiction to try Defendant because the State did not bring Defendant to trial within 180 days following receipt of his request for compliance with the Uniform Mandatory Disposition of Detainers Law (UMDDL), §§ 217.450 to 217.485.[1]

*FACTS*

On February 28, 1990, Defendant was charged in St. Francois County with first

1. All references to statutes are to RSMo Cum. Supp.1989, unless otherwise noted.

Sections 217.450, .455 and .460 which are pertinent here read as follows:

**217.450. Prisoner may request final disposition of pending indictment, information or complaint, how requested—director to notify prisoner of pending actions, failure to notify, effect**

1. Any person confined in a department correctional facility may request a final disposition of any untried indictment, information or complaint pending in this state against him while so imprisoned. The request shall be in writing addressed to the court in which the indictment, information or complaint is pending and to the prosecuting attorney charged with the duty of prosecuting it, and shall set forth the place of imprisonment.

2. The director shall promptly inform each offender in writing of the source and nature of any untried indictment, information or complaint against him of which the director has knowledge, and of his right to make a request for final disposition of such indictment, information or complaint.

3. Failure of the director to inform an offender, as required by this section, within one year after a detainer has been filed at the facility shall entitle him to a final dismissal of the indictment, information or complaint with prejudice.

**217.455. Director of division of adult institutions to transmit information and request**

The request provided for in section 217.450 shall be delivered to the director, who shall forthwith:

(1) Certify the term of commitment under which the offender is being held, the time already served, the time remaining to be served on the sentence, the time of parole eligibility of the offender, and any decisions of the state board of probation and parole relating to the offender; and

(2) Send by registered or certified mail, return receipt requested, one copy of the request and certificate to the court and one copy to the prosecuting attorney to whom it is addressed.

**217.460. Trial to be held, when—failure, effect**

Within one hundred eighty days after the receipt of the request and certificate, pursuant to sections 217.450 and 217.455, by the court and the prosecuting attorney or within such additional necessary or reasonable time as the court may grant, for good cause shown in open court, the offender or his counsel being present, the indictment, information or complaint shall be brought to trial. The parties may stipulate for a continuance or a continuance may be granted if notice is given to the attorney of record with an opportunity for him to be heard. If the indictment, information or complaint is not brought to trial within the period, no court of this state shall have jurisdiction of such indictment, information or complaint, nor shall the untried indictment, information or complaint be of any further force or effect; and the court shall issue an order dismissing the same with prejudice.

degree murder and armed criminal action. As the result of a change of venue the pending case was transferred to Pulaski County on January 7, 1992.

On January 12, 1992, Defendant, who was then serving an unrelated 37-year sentence in the Jefferson City correctional center, wrote the Records Officer of the penitentiary concerning the UMDDL asking if he could "file through the department of corrections on a pending charge but to which there is no detainer?" The Records Officer returned the letter to Defendant with a note written on the bottom saying "No! because we cannot offer temporary custody of you to somewhere, with no knowledge of the charges or complaint."

Thereafter, on June 1, 1992, Defendant sent a letter to the Pulaski County Circuit Clerk, the Prosecuting Attorney of St. Francois County, and the Assistant Attorney General assigned to prosecute the case requesting that he be tried on the pending charges within 180 days pursuant to the UMDDL.[2] The Assistant Attorney General stipulated that he received the letter on June 2 and the court file indicates that it was received by the court on June 3, 1992.

The docket sheet contains no entries following receipt of the letter until Defendant filed a motion to dismiss on December 7, 1992 (the 187th day following receipt of his demand for speedy trial by the court) alleging that the court no longer had jurisdiction and requesting that "all felony complaints, informations, and indictments presently filed against the movant in Pulaski County" be dismissed with prejudice "due to expiration of the time limitation prescribed by the Uniform Mandatory Disposition of Detainers Law (Sections 217.450–217.475 RSMo 1989)."[3] Pursuant to the Prosecutor's request on January 8, 1993, the case was scheduled for trial in September 1993. On March 29, 1993, a hearing was conducted on Defendant's motion to dismiss, which was overruled by the Respondent on April 2, by way of a docket entry, with no findings of fact or conclusions of law. Our preliminary writ was issued July 26, 1993.

## OPINION

### I

■ The initial issue, which is apparently one of first impression in this State, is whether a prisoner confined in a Missouri correctional facility is entitled to invoke the provisions of the UMDDL if no detainer[4] is filed

2. The letter stated:
 Re: Criminal Case Number CR790–271FX
 State of Missouri v. Vance R. Clark
 . . . .
 I, Vance R. Clark, the defendant in the above mentioned case, am filing notice with the Circuit Court of Pulaski County and with Kenny C. Hulshof, Assistant Attorney General, of my demand to be tried on the above mentioned charge within the 180 day time limitation dictated by the Uniform Mandatory Disposition of Detainers Law.
 Since the Uniform Mandatory Disposition of Detainers Law includes provision for the orderly disposition of complaints, the defendant has the right to make this demand even though a detainer has not been filed with the Missouri Department of Corrections.
 The defendant also gives notice that he will not waive this demand for speedy trial and that no attorney appointed to represent the defendant will have the right to waive this demand without specific written permission from the defendant.
 Thank you very much.
 Sincerely,
 Vance R. Clark, # 167236
 Jefferson City Correctional Center
 Box 900, H.U. 4–8
 Jefferson City, Missouri 65102

3. The letter requesting compliance with the UMDDL referred only to Case No. 790–271FX, which was the original case number assigned to it in St. Francois County. Case No. CR592–0017FX was assigned to the case when it was transferred to Pulaski County. Any entitlement to the benefit of the UMDDL can apply only to the charges filed under this case number.

4. A "detainer" has been defined as "a notification filed with the institution ... advising that he [the prisoner] is wanted to face pending criminal charges." *State ex rel. Kemp v. Hodge*, 629 S.W.2d 353, 354, n. 2 (Mo. banc 1982). In the instant case, Defendant acknowledged in his letter requesting a speedy trial that no detainer had been filed. The record reflects that a classification hearing held on August 4, 1992, indicated that Defendant was assigned to "Administrative Segregation 6–29–92 for the safety and good order of the institution due to a detainer for 1st. Degree Murder." At the hearing on the motion to dismiss, the superintendent of the Jefferson City correctional center testified that the reference to a "detainer" was incorrect and that the committee may have assumed that a detainer

with that institution. Defendant argues that § 217.450.1 authorizes a request by a Missouri prisoner for final disposition of charges pending in this state whether or not a detainer has been filed. The State[5] on the other hand urges us to interpret the UMDDL as being inapplicable unless a detainer is filed.

In interpreting a statute, we are mindful that, insofar as possible, legislative intent is to be determined from the language of the statute itself. *State v. Sweeney*, 701 S.W.2d 420, 423 (Mo. banc 1985). In doing so, words used in statutes are considered in their plain and ordinary meaning. *Jones v. Director of Revenue*, 832 S.W.2d 516, 517 (Mo. banc 1992); *State ex rel. Metro. St. Louis v. Sanders*, 807 S.W.2d 87, 88 (Mo. banc 1991). The legislature is presumed to have intended what the statute says, and if the language used is clear and unambiguous there is no room for construction. *Jones v. Director of Revenue*, 832 S.W.2d at 517; *Brownstein v. Rhomberg–Haglin & Associates*, 824 S.W.2d 13, 15 (Mo. banc 1992); *Brown v. Melahn*, 824 S.W.2d 930, 933 (Mo. App.1992). Stated another way:

> "The primary rule of statutory construction is to ascertain the intent of the lawmakers from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *Blue Springs Bowl v. Spralding* [sic], 551 S.W.2d 596, 598 (Mo. banc 1977). Where the language is clear and unambiguous, there is no room for construction. *Id.* This Court must be guided by what the legislature said, not by what the Court thinks it meant to say....

*Metro Auto Auction v. Director of Revenue*, 707 S.W.2d 397, 401 (Mo. banc 1986).

The language of § 217.450.1 is quite clear and direct. It permits *"[a]ny* person confined in a department correctional facility" to request a final disposition "of *any* untried indictment, information or complaint pending in this state against him" without other qualification or condition. Our courts have held that where statutory language is plain and unambiguous, "application ... of the statute, rather than construction, is all that is required." *Russell v. State*, 597 S.W.2d 694, 697 (Mo.App.1980). This applies to the plain and unambiguous language of § 217.450. Any attempt on our part, no matter how inviting, to impose the filing of a detainer as a condition through statutory construction would be result oriented and the equivalent of our attempt to inject what we might think the legislature meant to say. This, we are unable to do.

The Colorado Supreme Court reached the same conclusion in construing the UMDDL. See *People v. Campbell*, 742 P.2d 302, 306 (Colo.1987), where the court noted that their equivalent of our UMDDL contains no requirement that a detainer be filed, the scope of each provision of the statute is apparent from its face, and courts are required to give effect to the plain meaning of the words used by the legislature.

Even though we do not believe § 217.450.1 is ambiguous and therefore a candidate for judicial construction, we will respond to some of the arguments made by the State urging that result.

The statutes which are now §§ 217.450–.485 (UMDDL) were originally adopted in 1959.[6] In 1971, the legislature adopted present §§ 217.490–.520[7] which approved the "Agreement on Detainers" which is designed to be a compact with other states adopting it (the "Interstate Agreement" or "Agreement"). The Agreement applies to interstate prisoners and the UMDDL applies to intrastate prisoners. *Murphy v. State*, 777 S.W.2d 636, 638 (Mo.App.1989). The Interstate Agreement specifically refers to detainers by permitting a prisoner in another state

had in fact been filed because Defendant was in segregation. He also testified that the only reason Defendant was put in administrative segregation was "because of charges pending against him."

5. Respondent is represented in these proceedings by the Missouri Attorney General's Office. For purposes of clarity, instead of identifying arguments as those of Respondent, we will refer to them as those of the State.

6. They were originally §§ 222.080–.150.

7. They were originally §§ 222.160–.220.

against whom "a detainer has been lodged" to request that the pending, untried charges in Missouri be tried within 180 days. § 217.-490.[8] It has been held that because the Interstate Agreement contains an express provision concerning detainers, it applies only in the event one is filed. *See State v. Buckles*, 636 S.W.2d 914, 921 (Mo. banc 1982); *State v. Howell*, 818 S.W.2d 681, 682 (Mo.App.1991); *Hicks v. State*, 719 S.W.2d 86, 90 (Mo.App.1986); *State v. Soloway*, 603 S.W.2d 688, 690 (Mo.App.1980).

■ The State argues that because a detainer is required under the Interstate Agreement we should construe the UMDDL as requiring the same thing. It points out that the UMDDL and the Agreement are in *pari materia, Id.*, and are to be construed in harmony with each other. *State v. Smith*, 686 S.W.2d 543, 547 (Mo.App.1985). *See also State ex rel. Kemp v. Hodge*, 629 S.W.2d at 359. We do not believe that this principle, however, provides justification for judicial construction so as to create a condition which does not appear in the clear language of § 217.450.1, especially considering the history of these statutes.

The same session of the 1971 legislature which adopted what is now §§ 217.490–.520 (the Interstate Agreement specifically requiring the filing of a detainer and related provisions) also amended the predecessor to § 217.450.1. The amendment made the statute (UMDDL) applicable to pending complaints as well as indictments and informations but did not incorporate the requirement of a detainer which the same legislature adopted in the Interstate Agreement. At least one other legislature has seen fit to incorporate in its version of the UMDDL a specific requirement that a detainer be filed. Kentucky Revised Statutes, § 500.110. Additionally, §§ 217.450–.520 were all readopted in 1982 with minor changes, and

were again amended in 1989, but .450.1 still contains no requirement that a detainer be filed against Missouri prisoners before they are entitled to invoke the UMDDL as to pending charges.

Even if § 217.450.1 were ambiguous and uncertain, thereby authorizing judicial construction of the statute, it would be necessary to construe it bearing in mind the objective or purpose of the legislature and the evils it intended to cure by adopting the statute. *State ex rel. Rowland Group v. Koehr*, 831 S.W.2d 930, 931 (Mo. banc 1992); *Lederer v. State, Dept. of Social Services*, 825 S.W.2d 858, 863 (Mo.App.1992); *Osage Outdoor Advertising v. Missouri Highway & Transportation*, 680 S.W.2d 164, 169 (Mo.App.1984).

Some guidance as to the legislature's purpose in adopting the UMDDL can be gleaned, by dictum, from *State ex rel. Kemp v. Hodge, supra.* In that case, a detainer was filed against the defendant while he was incarcerated in the Missouri State Penitentiary. His request for disposition of the charges under UMDDL, however, occurred while the felony complaint was pending. The issue was whether the UMDDL required that only the complaint be disposed of within 180 days or if the succeeding information must also be disposed of in that time period. The issue in *Hodge* was not whether the UMDDL applied in the absence of a detainer. Nevertheless, the court's opinion includes statements which could be construed as indicating that the UMDDL was intended to apply to cases other than just those involving a detainer. Those include the following:

Experience has shown that once a *charge or detainer* is filed against an inmate, that inmate's status within the prison changes adversely. (Emphasis added.) *Id.* at 355.

To allow rehabilitation programs and treatment programs to be planned and car-

---

**8.** The Agreement contained in § 217.490 provides in part:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has

been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; ...

ried out, it is necessary that *untried charges* be disposed of either by trial or by dismissal within a reasonable time. (Emphasis added.)

*Id.* at 355.

Through enactment of both of these laws, the legislature clearly showed its intention "to go beyond constitutional minimum standards by providing (1) a specific procedure for persons imprisoned in correctional institutions of this state to obtain a speedy trial on *any untried charges pending against them* in this state, (2) a general rule that such imprisoned persons *shall be brought to trial* on any untried state charges within one hundred and eighty days after the designated authorities receive a properly initiated request, and (3) a loss of jurisdiction over a pending charge, irrespective of its gravity, if it is not tried within the statutorily designated time period." (Citation omitted.) (Emphasis added.)

*Id.* at 356.

As indicated in *Hodge*, the filing of a charge *or* detainer may affect decisions concerning the confinement, classification and rehabilitation of a prisoner.[9] Having said that, the court in *Hodge* quoted from *State v. Wilson*, 22 Utah 2d 361, 453 P.2d 158, 159 (1969), saying: "It is apparent that the aim of the legislature was to prevent those charged with enforcement of criminal statutes from holding over the head of a prisoner undisposed of charges against him." *Id.* at 355. *See also People v. Campbell*, 742 P.2d at 307. It should be noted that the state and society also have a strong interest in seeing that pending charges are tried in a speedy fashion. *Hodge* at 356, n. 4.

 The State also points to the fact that the official title of the statute adopted in 1959 was "An act relating to the disposition of detainers within the state" and argues that the restrictive title is indicative of the stat-

ute's purpose. The title of an act is a part of it and is to be considered in construing the legislation. *See* Missouri Const. Art. 3, § 23; *Bullington v. State*, 459 S.W.2d 334, 341 (Mo. 1970); *State ex rel. Missouri Highway v. Appelquist*, 698 S.W.2d 883, 894 (Mo.App. 1985). The restrictive title of the uniform act has been referred to in opinions from other states concerning its interpretation. *See* the dissenting opinion in *People v. Campbell*, 742 P.2d at 312, and *State v. Milton*, 26 Conn. App. 698, 603 A.2d 750, 754 (1992) (in which it was not only noted that the official title of the statute referred to detainers but also that Connecticut's House Bill contained the following statement of purpose: "To make it possible for a prisoner to institute disposition of *detainers* "). In considering the use of the word "detainer" in the title of the Act, we note that § 217.450.3 does contain a specific reference to "detainers" by requiring the director to inform a prisoner within one year after one is filed. A part of the statute does, therefore, specifically refer to "detainers," while that under consideration here (§ 217.-450.1) does not. We are not persuaded, however, that the reference to "detainers" in the title of this act should result in § 217.450.1 being judicially construed, or should have the effect of creating a condition which is not included in the plain, unambiguous language of that section.

Based on the above, even if § 217.450 were ambiguous, thereby authorizing judicial construction of its meaning or scope based on the legislature's objectives, we are not convinced that we would be authorized to construe it as being applicable only in the event a detainer is filed.

The State argues that our courts have held that a prisoner cannot claim the benefits of the UMDDL or the Interstate Agreement in the absence of a detainer, citing *State v. Buckles*, 636 S.W.2d at 921; *State v. Foster*, 838 S.W.2d 60, 68 (Mo.App.1992); *State v.*

---

9. In the instant case, according to the evidence, Defendant was transferred into administrative segregation on June 29, 1992, because there was a pending murder charge against him. Obviously, this charge was known not only to the Defendant but also to the prison officials. Therefore, whether the information came from a detainer or from some other source, the result was the same as it applied to Defendant's status as a prisoner in the state's correctional system. We are not asked to and do not decide whether knowledge received by the prison officials can be the equivalent of a detainer.

*Howell,* 818 S.W.2d at 682; *State v. Leisure,* 810 S.W.2d 560, 576 (Mo.App.1991); *Hicks v. State,* 719 S.W.2d at 89; and *State v. Soloway,* 603 S.W.2d at 690. All of these cases, however, involved application of the Interstate Agreement rather than the UMDDL. Cases cited by the State from other jurisdictions also involved application of the equivalent of our Interstate Agreement with one exception. *Huddleston v. Jennings,* 723 S.W.2d 381, 383 (Ky.App.1986), involved Kentucky's version of the UMDDL but, as noted above, that statute included a specific requirement that a detainer be filed and therefore is not authority for the State's position.

Some states have interpreted the UMDDL as requiring the filing of a detainer. In *Mayes v. State,* 612 So.2d 1328 (Ala.Cr.App. 1992), however, the legislation enacting Alabama's UMDDL and approving the Interstate Agreement indicated that both were intended to require detainers. It provided that its purpose was to enter into an agreement with other states to secure the expeditious disposition of detainers against persons incarcerated in other jurisdictions *and* "to further provide for the uniform mandatory disposition *of detainers* so as to prescribe the manner and proceedings *for release of detainers* available to incarcerated persons against whom there is pending untried indictments, information or complaints." *Id.* at 1329. See also *State v. Milton,* 603 A.2d at 754–755, where the court applied what it believed to be legislative intent; and *State v. Carlson,* 258 N.W.2d 253 (N.D.1977), where the issue was whether the defendant had waived the benefits of the act and the court made the statement that a detainer was required without citing any authority or disclosing its reasoning. We are not persuaded, however, by any of those cases that § 217.-450 should be judicially interpreted so as to impose the requirement of a detainer. We do, therefore, hold that § 217.450 does not require the filing of a detainer before a prisoner in a Missouri correctional institution may request final disposition of pending indictments, informations or complaints.

---

10. Pursuant to § 217.010(5), the "director" may include his designee. The evidence indicated that the Records Officer is the designee of the

## II

■ The State also argues that Defendant failed to comply with the procedural requirements of the UMDDL in making his request. Specifically, it contends that Defendant is not entitled to take advantage of the UMDDL because his request was not delivered to the director; he, instead of the director, mailed the request to the prosecuting attorney and the court; and the request did not include the certificate of the director containing the information specified in § 217.455. Defendant, however, had earlier made a specific inquiry to the prison's Records Officer[10] concerning whether he could file a request under the UMDDL through the Department of Corrections on a pending charge for which there was no detainer. He was told that he could not, and the Records Officer testified that this meant "we couldn't help him file for speedy trial...."

The Interstate Agreement also requires that the request be forwarded through the director who is to include a certificate containing the same information as required by § 217.455. Our courts have permitted an interstate prisoner to make a request for final disposition pursuant to the Agreement by mailing the request directly to the court and prosecutor without processing it through the director. *See State ex rel. Saxton v. Moore,* 598 S.W.2d 586, 590 (Mo.App.1980). In that case, the state did not claim that the prisoner should be denied the benefits of the Interstate Agreement because of his self-help, but it was noted that courts generally do not require "literal and exact compliance by the prisoner" so long as a good faith effort is made. *Id.* at 589–590.

In *State v. Turley,* 442 S.W.2d 75, 80 (Mo. banc 1969), the court denied relief to the prisoner under the UMDDL. In doing so, it noted that not only had the prisoner failed to deliver his request to the director for processing as provided under the statute, but that the record also did not indicate any attempt to comply with these requirements.

---

director for the purposes of handling requests for final disposition pursuant to the UMDDL.

In the instant case, Defendant was told that, in the absence of a detainer, he could not file the request through the prison officials. Section 217.450 specifies the required contents of that portion of a request for which the prisoner is responsible. It requires that the request be in writing, be addressed to the prosecuting attorney and to the court in which the indictment, information or complaint is pending, and shall set forth his place of imprisonment. Defendant's request in the instant case met these requirements. It has been held that failure to deliver the request to the prison officials for processing does not defeat substantial compliance with the UMDDL where the prosecutor had actual notice of the request and did not act on it. *People v. Campbell*, 742 P.2d at 311.

Under the facts of this particular case, Defendant should not be denied the opportunity of requesting final disposition of the charges pending against him because of the prison official's refusal to process his request. See *State v. Smith*, 686 S.W.2d at 547, in which a prisoner was permitted to invoke the Interstate Agreement where irregularities in the procedural requirements were caused by the prison officials.

### III

■ Finally, the State argues that the 180–day requirement imposed by § 217.460 should be considered as having been tolled. The burden to show that the time limit should be extended, however, is on the State. See *State v. Smith*, 686 S.W.2d at 547–548; *State ex rel. Hammett v. McKenzie*, 596 S.W.2d 53, 59 (Mo.App.1980). In its effort to meet this burden the State contends that: (1) plea bargaining was taking place; (2) Defendant had filed a motion to suppress which was still pending and, therefore, he was not ready for trial; and (3) the Assistant Attorney General handling the prosecution of the pending charges was lulled by Defendant's attorney into letting the 180–day time limit pass.

All of these arguments have, as their evidentiary basis, an offer of proof made by the State when the motion to dismiss was heard

by the trial court. The offer of proof, consisting of anticipated testimony from the Assistant Attorney General, was denied and there is no contention here that the ruling was improper. Even considering the excluded offer of proof, we conclude that the State failed to sustain its burden of showing a reasonable basis for extending the time within which it was required to bring Defendant to trial.

■ Based on the offer of proof, the "plea bargaining" on which the State relies consisted of one inquiry by Defendant's attorney on July 10, 1992, about whether the State would waive the death penalty and a negative response from the State in mid-August. At that time defense counsel was inquiring "whether the State might be willing to engage in plea negotiations," but the response was that a jury would be in the best position to consider sentence. We do not construe these preliminary discussions as being the type of plea bargaining which could provide a reasonable excuse for failing to bring the case to trial. There is nothing about it which could have led the State to presume that there was a reasonable chance the case could be concluded short of trial. In addition, the cases cited by the State in support of this argument are all distinguishable. *State v. Smith*, 686 S.W.2d 543, did not involve an issue of plea bargaining; *Commonwealth v. Martin*, 445 Pa. 49, 282 A.2d 241 (1971), involved "extensive plea bargaining"; and *People v. Harlan*, 129 Mich.App. 769, 344 N.W.2d 300 (1983), involved plea bargaining which had progressed to the point that a date to accept the plea had been set when the agreement broke down.

■ The State also relies on the fact that a motion to suppress was filed by Defendant as an excuse for failing to bring the matter to trial. The only mention of such a motion is in the rejected offer of proof by the Assistant Attorney General,[11] but there is no indication as to when it was filed or how much time would have been required to dispose of it. The offer of proof indicated that the Assistant Attorney General told defense counsel that he (Defendant's lawyer) needed to notice

---

11. The docket sheet does not reflect a motion to suppress.

the matter up for hearing but it was not done. The State, as well as the Defendant, is entitled to request that such motions be ruled. Rule 24.04(b)(4), V.A.M.R.

The State cites *State v. Galvan*, 795 S.W.2d 113 (Mo.App.1990), for the proposition that the 180–day time limit should be tolled when the defendant is not ready for trial because of his pending motions. The *Galvan* case, however, involved a number of other reasons why the defendant was not ready for trial, and the court noted that defendant was not ready for a hearing on a pending motion to suppress. *Id.* at 118. The State also cites *State v. Rose*, 604 A.2d 24 (Me.1992), which holds that the time between the filing of a motion to suppress and its scheduled hearing should not be counted against the state. In the instant case, the record does not reflect that the motion was ever set for hearing. The *Rose* case, however, additionally states that a defendant's waiver of the 180–day limit applies to the time it takes to resolve matters raised by him. As stated in *State v. Smith*, 686 S.W.2d at 548:

> ... The record discloses no reason why those motions could not have been disposed of within a short time after they were filed. There is no evidence the process of discovery did in fact delay the trial. There is no suggestion in the record of how those pleadings could have resulted in delay. The state did not meet its burden to establish that the defendant's motions and request delayed the trial....

In the instant case, the State has likewise failed to sustain its burden to demonstrate that the motion delayed the trial.

Finally, the State argues that the Assistant Attorney General assigned to prosecute this case was lulled by Defendant's attorney into letting the 180–day time limit pass. In support, he points to a conversation which allegedly occurred on November 17 (before expiration of 180 days) when the Assistant Attorney General inquired of Defendant's counsel if it would be necessary to file a formal motion to set the matter for trial, and he (the Assistant Attorney General) was assured that that would not be necessary. The offer of proof did not indicate any discussion about whether it was possible to set the case for trial before the expiration of 180 days after Defendant's request, or whether the State would need to take any action to avoid the consequences of failing to bring the case to trial within the time limit. The statement of defense counsel that no formal motion would be required to get the case set can hardly be an indication that Defendant was stalling or interfering with efforts to get the matter to trial. Additionally, even if this would otherwise be some evidence that Defendant waived the UMDDL, it must be remembered that Defendant placed the State on notice in his letter requesting prompt disposition when he said "no attorney appointed to represent the defendant will have the right to waive this demand without specific written permission from the defendant."

Section 217.460 permits the court to grant additional time for final disposition of charges which are the subject of a § 217.450 request "for good cause shown in open court, the offender or his counsel being present," and further provides that the parties "may stipulate for a continuance or a continuance may be granted if notice is given to the attorney of record with an opportunity for him to be heard." Based upon the record before us, none of that occurred in the instant case. That being so, § 217.460 explicitly provides that if the indictment, information or complaint is not brought to trial within 180 days, "no court of this state shall have jurisdiction of such indictment, information or complaint, nor shall the untried indictment, information or complaint be of any further force or effect; and the court shall issue an order dismissing the same with prejudice."

As said in *Russell v. State*, 597 S.W.2d at 697, this language of the statute is "not drenched in doubt or ambiguity, hence application of this portion of the statute, rather than construction, is all that is required." The prisoner's written request is fair notice to the prosecutor that if he is to try Defendant he should proceed within 180 days or "should avail himself of the saving provisions in the statute." *State ex rel. Kemp v. Hodge*, 629 S.W.2d at 360–361. The prosecutor is not "locked into commencing trial within a

180 day period no matter what the situation may be. If there are valid reasons why the prosecution cannot meet the deadline, the prosecutor is not helpless" since the statute permits the state to obtain additional time upon the showing of good cause in open court. *Id.* at 361.

In the instant case, Defendant was not brought to trial within 180 days and no effort was made to obtain an extension of the time within which the charges were required to be disposed of. Additionally, the State has not sustained its burden to show good cause for its failure to dispose of the charges within 180 days. Based upon the record before us, we are left with no choice but to hold that the trial court has lost jurisdiction of the charges pending in Pulaski County under Case No. CR592–0017FX, which was formerly St. Francois County Case No. CR790–271FX. The preliminary writ is made absolute.